Argued and submitted November 9, 1984, reversed and remanded June 5, 1985

CRAWFORD,
*Appellant,*

*v.*

STOWELL et al,
*Respondents.*

(34035; CA A32341)

701 P2d 480

Timothy E. Brophy, Portland, argued the cause for appellant. With him on the briefs was Bernard, Kneeland, Crawford & Brophy, Portland.

Jay D. Enloe, Portland, argued the cause for respondents. With him on the brief was Lachenmeier & Enloe, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

In this personal injury action, plaintiff appeals from a summary judgment in favor of defendants. Viewing the record in the light most favorable to plaintiff, *Stanfield v. Laccoarce,* 288 Or 659, 665, 607 P2d 177 (1980), we conclude that defendants have not shown that there is no genuine issue of material fact. Accordingly, we reverse and remand.

Defendants own a ski shop known as Stowell's Ski Haus. Plaintiff brought her skis to defendants' shop and was injured when defendants' employe, Temple, attempted to adjust her ski bindings. After making some adjustments to the skis, Temple asked plaintiff to put on one boot, place it in the ski binding and to step forward with the opposite foot to cause the binding mechanism to release. When plaintiff stepped forward, her Achilles tendon was severed.

In her complaint, plaintiff alleges that defendants negligently caused plaintiff's injuries:

"1.   By failing to properly adjust the bindings so that they would release safely;

"2.   By failing to check the release point of the bindings prior to requesting Plaintiff to physically check the bindings;

"3.   By failing to warn the Plaintiff that the bindings or the check procedures could cause her physical injury."

Defendants filed a motion for summary judgment with supporting affidavits and documents. In his affidavit, Temple stated that he had been an employe in defendants' ski shop for three years and had been adjusting bindings of the type used on plaintiff's skis for 13 years. He further stated that in adjusting plaintiff's bindings he

"* * * first adjusted the toe bindings on each ski with a gauge and thereafter proceeded to adjust the heel bindings by way of a 'rug test,' *which consists of asking the customer to step into the binding, which has been previously loosened considerably,* and to thereafter step forward with the opposite foot. The heel binding is then slowly tightened until the proper tension is discovered. * * *" (Emphasis supplied.)

He also stated that the "rug test" is "commonly used in the ski industry and in this community and has never been considered by anyone to be unsafe."

14

Defendants also submitted a medical report of Dr. Carroll, plaintiff's treating physician, in which he stated that his "feeling is that the patient has a weakened Achilles tendon which is common in her age group and it gave way under the extreme position and force required in this test. * * *" He went on to say: "I am not that familiar with binding testing to be able to detect any abnormality in the procedure. * * *" The parties agree that Dr. Carroll is not competent to give testimony on the nature of the "rug test" or its safety.

In addition, defendants submitted a portion of plaintiff's deposition in which she stated that she believed that Temple had neglected to adjust the bindings properly, in that he did not use plaintiff's boots in the adjustment procedure.

Plaintiff submitted no counter-affidavits, because, she contended, defendants had not met their burden of showing an absence of genuine issues of material fact and that they were entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978).

The affidavits and exhibits on which defendants rely disclose a genuine issue as to whether the bindings were properly adjusted before plaintiff was instructed to perform the "rug test." The assertion contained in Temple's affidavit that the "rug test" is a common and accepted practice, even if accepted as true, does not state that the test was properly performed in this instance. The emphasized portion of the affidavit quoted above describes the "rug test" but does not say that Temple loosened the binding considerably before asking plaintiff to step into it. The medical report of Dr. Carroll, expressing the doctor's "feeling" that the cause of the injury was plaintiff's weakened Achilles tendon, "which is common in her age group," does not establish, as a matter of law, that defendants' conduct met the applicable standard of care. It could be argued that, if a weakened Achilles tendon is common in people of plaintiff's age, defendants should have been aware of that fact and should have warned her, as she alleged.

Defendants contend that ORCP 47D requires the granting of a motion for summary judgment if the party opposing the motion files no affidavit in opposition. ORCP 47D reads, in relevant part:

"* * * When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of that party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If the adverse party does not so respond, summary judgment, *if appropriate,* shall be entered against such party." (Emphasis supplied.)

Although plaintiff filed no affidavit in opposition to the motion, the affidavits and exhibits filed by defendants do not establish the absence of a genuine issue of material fact. Therefore, the entry of summary judgment is not "appropriate" within the meaning of ORCP 47D. *Glassner v. Northwest Lustre Craft Co.,* 39 Or App 175, 591 P2d 419 (1979). It was error to grant defendants' motion for summary judgment.

Reversed and remanded.