Argued April 10, reversed May 23, 1962

# IMPERIAL INVESTMENT CO *v.* ROUSE, AND CANAL INSURANCE COMPANY

371 P. 2d 962

*W. J. Masters,* Portland, argued the cause for appellant. On the brief were Masters & Masters, Portland.

*Roland F. Banks, Jr.,* Portland, argued the cause for respondent. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY and GOODWIN, Justices.

GOODWIN, J.

This is an appeal by a judgment creditor from a proceeding against the Canal Insurance Company as garnishee. The judgment creditor recovered roughly 25 per cent of its claim, and assigns error to the failure of the court to allow the claim in its entirety.

Imperial Investment Company loaned money to one Rouse to enable Rouse to buy insurance for his trucks. Rouse gave Imperial his note. Imperial delivered the proceeds of the loan to an insurance firm doing business as Surplus Line Company. In due

course, Surplus Line issued to Rouse a policy covering physical damage on Rouse's trucks. The policy was on a form furnished by Canal Insurance Company. After being in force a short time, the policy of insurance was canceled by Canal, apparently because no premium payment had reached Canal's home office. The record suggests that one or more of the intermediate handlers of the money became insolvent about the time of the events involved in this case. However that may be, Rouse became entitled to the return of the unearned portion of his premium when his insurance was canceled. Meanwhile, Rouse failed to pay his note, and eventually Imperial reduced Rouse's debt to judgment. Imperial, as the judgment creditor of Rouse, now seeks under the garnishment proceedings to reach any sum Canal may owe Rouse as an unearned premium.

The cause was tried to the court without a jury. Findings were made and judgment was entered on the theory that Canal was liable for only 25 per cent of the amount to be refunded. Canal's theory, and the one adopted by the trial court, was that Surplus Line was acting as the agent of third parties, i.e., certain underwriters at Lloyd's, London, in the collection of 75 per cent of the Rouse premium, and that Rouse, and therefore Imperial, cannot look to Canal for any sum in excess of the 25 per cent which Surplus Line was obligated to forward to Canal. (The record shows that neither Lloyd's nor Canal ever received any part of the premium from their agents.)

An understanding of the ruling by the court below requires a discussion of the complex transaction by which Lloyd's came to play a part in Rouse's coverage. Initially, we note that the trial court correctly characterized Surplus Line as an agent of Canal as well as an agent of the underwriters at Lloyd's, London.

Surplus Line was an agent for a number of principals. Surplus Line issued to Rouse a Canal policy for the entire coverage sought, in exchange for the payment by Rouse of the entire premium. Canal meanwhile had instructed all its agents that it would not insure risks of the kind involved in this case unless 75 per cent of the risk was reinsured. There is no evidence that Rouse had any knowledge of these instructions from Canal; nor is there evidence that he even knew of the existence of reinsurance. In any event, Surplus Line prepared for Canal a Lloyd's "Certificate of Insurance" which constituted the engagement of said underwriters to carry 75 per cent of Canal's risk under Canal's contract with Rouse.

Surplus Line had authority from both Canal and Lloyd's to carry out each step of this multilateral transaction. In the ordinary course of business, Surplus Line collected premiums from its customers, and for that part of its business which involved reinsurance customarily remitted periodically to Canal and to the reinsurer according to the percentage of the risk assumed by each as shown by its agency accounts.[1] In this case, it is undisputed that Surplus Line received the entire premium. We are not concerned with the ultimate disposition of the funds. We are concerned only with the amount of the premium for which Canal became legally chargeable when the full premium was paid to its agent, Surplus Line. Rouse, of course, may not recover from Canal any payments not received by Canal's agent on its behalf. Thus, the question is presented whether Surplus Line

---

[1] Surplus Line was related to a parent organization, The Benson Company. The Benson Company was admittedly an agent both of Canal and Lloyd's. The actual division of premiums in this case may have been made by Benson.

had authority[9] to and did receive on Canal's behalf the entire premium, or only 25 per cent thereof. The court below held that "of the total premium paid to Surplus Line * * * Company by Imperial Investment Company only 25% thereof was paid to Surplus Lines as agent for Canal Insurance Company."

The trial court set forth the following as a finding of fact:

"That * * * Canal Insurance Company and the Underwriters at Lloyds, London, entered into contracts of physical damage insurance through their * * * agent, Surplus Line * * * Company, with defendant, James G. Rouse * * *. That the Canal Insurance Policy provided 25% of the physical damage coverage and that the Underwriters at Lloyds Certificate provided 75% of the coverage * * *."

██ No objection was made under ORS 17.430 to the above finding. Counsel for Canal accordingly have cited *dictum* in the case of *Scott et al v. Lawrence Whse. Co.*, 227 Or 78, 100, 360 P2d 610 (1961), to the effect that in a nonjury trial of an action at law unchallenged findings of fact are conclusive on appeal. As an abstract proposition of law, that statement is correct. It is the holding in the *Scott* case, however, which is applicable here. Conclusions of law challenged by assignments of error are not invulnerable even though they may have been treated as findings of fact

---

[9] As will be seen in our disposition of the question of the actual authority of Surplus Line to make contracts and to collect premiums therefor on behalf of Canal, it is unnecessary to consider the possible effect of the doctrine of apparent authority upon the rights of the parties in this case. It might be observed, however, that even if Surplus Line had had no actual authority to receive the Rouse premium, Canal might nonetheless have been liable under the rule set forth in Restatement 2d, Agency § 159 (1958).

in the trial court, and even though the appellant did not object to such "findings." *Scott et al v. Lawrence Whse. Co.,* 227 Or at 99-100. Whether there existed a contractual relationship between Lloyd's and Rouse or between Lloyd's and Canal, and the legal effect in this case of the existence or nonexistence of such contracts, involve questions of law which were appropriately challenged by Imperial. They are thus subject to judicial review.[9] We might note further that there is no dispute as to the wording of the insurance certificates nor as to their execution. The documents are in evidence and speak for themselves. There is, then, no factual question at all as to the certificates; the problem, rather, lies in determining their legal import and the effect of that import in the case at bar.

■■■ Through its agent, Surplus Line, Canal issued a physical damage policy to Rouse. On its face, the policy shows Canal as the insurer and Rouse as the insured. The policy subjected Canal to liability for the entire amount of any loss within its limits and not merely for a percentage thereof. It is equally clear that Rouse had no contractual relationship with Lloyd's underwriters. The Lloyds certificate was issued to Canal. It states on its face that the assured, Canal, shall be liable to Lloyd's for all earned premiums. Furthermore, the Lloyd's certificate describes itself as reinsurance of the underlying Canal policy. Thus, it becomes clear that, in legal contemplation at least, Canal issued its policy to Rouse to cover the entire risk in return for Rouse's payment of the entire

---

[9] See the discussion of the problem of questions of fact and law in the context of judicial review of administrative action in Jaffe, *Judicial Review: Question of Law,* 69 Harv L Rev 239 (1955); Jaffe, *Judicial Review: Question of Fact,* 69 Harv L Rev 1020 (1956); see also Jaffe, *Judicial Review: Constitutional and Jurisdictional Fact,* 70 Harv L Rev 953 (1957).

premium, and that Canal thereafter laid off 75 per cent of the risk with Lloyd's in a separate transaction. Of course, all these transactions were effected on behalf of the two principals, Canal and Lloyd's, by one agent, Surplus Line, which was acting for both.[4] The true nature of the transaction can be seen from the provision in the Lloyd's certificate making Canal liable for premiums. If Surplus Line was to receive premiums for Lloyd's account directly from Rouse, then Lloyd's would not have had the contractual right to look to Canal. The provisions in the Lloyd's contract entered into in accordance with Canal's instructions clearly indicate Canal's understanding as to the nature of the transaction. Thus, it becomes evident that Surplus Line did in fact receive the entire premium as an agent for Canal. Payment to an agent authorized to receive it is payment to the principal. Canal therefore is deemed to have received the entire premium. *Zriny v. Hartford Fire Insurance Co.*, 10 NJ Misc 181, 158 A 430 (1932); Restatement 2d, Agency § 165, comment *e* (1958). Consequently, Canal is liable to Rouse for the entire amount of the unearned premium and so to Imperial to the extent that such sum will satisfy Imperial's judgment against Rouse. This is so even though Canal never received the premium payment. *Zriny v. Hartford Fire Insurance Co.*, supra.

Surplus Line acted as Canal's agent in writing the policy for Rouse; it acted as agent for Lloyd's in issuing the Lloyd's certificate to Canal, and as an

[4] It may be that some part of this transaction was handled by Surplus Line's parent, The Benson Company. If so, this fact has no relevance since it does not affect the nature of the underlying transaction nor the liability of the respective parties thereto: Rouse, Canal, and Lloyd's. We noted above that, like Surplus Line, The Benson Company was an agent both of Canal and Lloyd's. So far as the liability of the principals is concerned, it is immaterial which of two agents took a particular action.

agent of Canal in accepting the certificate; finally, it acted as an agent for Canal in receiving the premium from Rouse. Had Surplus Line completed the transaction, it would have acted as an agent for Lloyd's in forwarding to Lloyd's its share of Canal's total premium.[9] Since the reinsurance contract between Lloyd's and Canal, which Lloyd's had authorized Surplus Line to issue, carried with it the authority to receive payment therefor, Surplus Line had authority to receive such payments for Lloyd's from Canal. Restatement 2d, Agency § 71 (1958). Similarly, the Canal insurance policy issued to Rouse by Surplus Line carried with it authority to receive payment therefor from Rouse. Restatement 2d, Agency § 71 (1958). As we have stated above, Canal had given Surplus Line authority to issue policies of this type. Thus, Surplus Line had authority to and did, in fact, receive the entire payment for the Rouse policy as an agent of Canal, so that Canal is liable for the entire return premium.

The judgment must be reversed with instructions to enter judgment for Imperial to the extent that the unearned premium may be necessary to satisfy the same.

Reversed.

---

[9] It may well have been the parent organization, The Benson Company, which was to act in this final double-agency relationship for the Rouse policy. The alternative does not affect this case, however, for Canal was deemed to have received the entire premium when Surplus Line accepted it from Rouse on Canal's behalf.