Argued May 4, reversed October 24, 1978

UNITED STATES PIPE AND
FOUNDRY CO., *Respondent,*
*v.*
NORTHWESTERN AGENCIES, INC., *Appellant.*
(TC 417-923, SC 25153)
585 P2d 691

Edward H. Warren, Portland, argued the cause for appellant. With him on the briefs was Hershiser, Mitchell & Warren, Portland.

William A. Masters, Portland, argued the cause for respondent. On the brief were Jeffrey L. Dye and Jones, Lang, Klein, Wolf & Smith, Portland.

Before Denecke, Chief Justice, Bryson and Linde, Justices, and Tanzer, Justice Pro Tempore.

TANZER, Justice Pro Tempore.

## TANZER, J., pro tempore

This case involves a chain of agency stretching from the plaintiff insured through the defendant insurance agency to a London underwriter. The plaintiff ordered insurance on a maritime cargo and paid a premium. It received a binder and Certificate of Insurance, but the premium never reached the underwriters. The plaintiff's cargo sustained damage during the voyage. Plaintiff sued defendant for rescission and restitution of its premium, rather than acting for damages. Plaintiff contends that the Certificate of Insurance issued in this case was insufficient to insure.

The trial court ordered restitution because it concluded that the defendant, having contracted to procure insurance for plaintiff's cargo, breached the contract by failing to do so. The issue on defendant's appeal is whether it had procured insurance for plaintiff. We conclude that it had and therefore reverse.

### Facts

This being a suit in equity, our review is de novo on the record. ORS 19.125. The suit was tried on stipulated facts, depositions and documentary evidence.

In early March of 1972, the plaintiff requested defendant to procure insurance for its cargo. Defendant agreed to place the coverage and did so through James E. Moore & Company, a brokerage firm and marine insurance underwriter in San Francisco. Moore selected Lloyd's of London to be the principal underwriter and contacted Puritan Marine Insurance Underwriters' Corporation, in Boston, Massachusetts, a United States correspondent of Lloyd's. Puritan Marine in turn used Keith Bell & Associates to make the actual arrangements for coverage with Lloyd's. Thus, the chain runs from plaintiff to defendant to Moore to Puritan Marine to Bell to Lloyd's.

Moore did not have general authority to bind coverage for Puritan Marine, but an officer of Puritan

Marine formally acknowledged the underwriting in this case and authorized Moore to bind coverage. On March 3, 1972, Moore mailed a binder to the defendant which in turn mailed it to the plaintiff on March 6. The binder specified that insurance was to cover a sailing date of March 4. Puritan Marine then mailed a Certificate of Insurance to Moore who mailed it with an invoice for the premium to the defendant who mailed them in turn to the plaintiff on April 8, 1972. On April 18, 1972, the plaintiff paid the premium of $5,063 to the defendant. After deducting its commission, defendant remitted the balance to Moore, who subtracted its commission and forwarded the remainder to Puritan Marine.

Both the binder and Certificate of Insurance specified that insurance was in effect with the London underwriters (Lloyd's) in a specified amount. They also listed the plaintiff as the assured, the covered cargo as cast iron pipe being carried on named barges belonging to the plaintiff, and the date of the voyage. The certificate also provided that the underwriter could cancel the insurance by a five-day actual or mailed written notice to the assured.

During the voyage, plaintiff's pipe sustained damage and on January 30, 1973, plaintiff submitted a claim in the amount of $2,498 to the defendant for transmittal to Moore. On February 2, 1973, defendant sent the claims to Moore, who transmitted them to Puritan Marine. Moore received no response from Puritan Marine. On January 4, 1974, almost two years after the insurance had apparently been placed, Moore informed defendant that it had just learned that at some unspecified time in the past Puritan Marine had requested K. Bell to cancel the coverage for nonpayment of the premium. No notice of cancellation had been sent by Puritan Marine to Moore or to anyone else down the chain. When plaintiff learned that the premium had been diverted, it brought this suit for rescission on the theory that the defendant had breached the contract by failing to procure insurance.

The issue is whether defendant had breached its contract to secure insurance for plaintiff. Since the facts do not disclose when during the voyage the damage to plaintiff's cargo occurred, we analyze the question of coverage under both the binder and the Certificate of Insurance. We hold that both the binder and Certificate of Insurance were effective to insure plaintiff.

■■ The binder was effective because it was a valid temporary contract made by an agent authorized to do so by the insurer. A binder which specifies the parties to the agreement, the type of coverage, the property covered and the limit of liability is sufficiently specific to constitute a temporary contract of insurance pending issuance or denial of a permanent and more complete policy of insurance. We need not sort out the choice of law issues because this is the law of Oregon, *United Pac. Ins. v. Truck Ins. Exch.,* 273 Or 283, 290, 541 P2d 448 (1975), the general rule, 12 Appleman, Insurance Law and Practice, ch 263, § 7221, pp 306-307 (1968), and British practice, Arnould, British Shipping Laws, Marine Insurance, Vol 9, pp 44-47 (1961). The binder issued by Puritan Marine in this case meets that standard. Coverage was authorized because Puritan Marine, as the American correspondent of Lloyd's, had the authority to bind Lloyd's and exercised this authority by specifically authorizing Moore to bind coverage. Moore bound the underwriters on March 3, 1972. Thus Moore was authorized by the agent of the assurer to bind the assurer. Moore's transmittal of the binder did so.

■■ Whether the Certificate of Insurance was effective involves two distinct questions: (1) whether plaintiff's premium was tendered to the insurer, and (2) whether there was an effective cancellation. Payment to an agent authorized to receive it is payment to the principal. *Imperial Investment Co. v. Rouse,* 231 Or 7, 13, 371 P2d 962 (1962). Thus defendant's transmittal of plaintiff's premium to Moore and Moore's transmittal to Puritan Marine constituted payment to the

London underwriter. Once the premium was paid, the Certificate of Insurance governed the rights of the parties. The certificate provided that a contract of insurance was in effect and would so continue until cancelled by a five-day prior written notice to the assured. There having been no notice prior to the loss, the certificate remained effective.

We conclude therefore that both binder and certificate were effective to insure plaintiff. Since procuring insurance was what defendant contracted to do, there was no breach and no cause for rescission.

Reversed.