Argued and submitted February 25, reversed and remanded July 17, 1985

# UNITED STATES NATIONAL BANK OF OREGON,
*Appellant,*

*v.*

# MILLER et al,
*Respondents.*

(A8209-05854; CA A31717)

703 P2d 246

Brad Littlefield, Portland, argued the cause for appellant. With him on the briefs was Goldsmith, Siegel, Engel & Littlefield, Portland.

John Folawn, Portland, argued the cause for respondents.

With him on the brief was Holmes, DeFrancq & Schulte, P.C., Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff, the personal representative of the estate of Hazel Lipe, brought an action for money had and received against defendants, who are husband and wife. The trial court granted defendants' motion for summary judgment. We reverse and remand.

We draw the facts from the affidavits and depositions in the record. Mrs. Lipe died in December, 1981, at the age of 94. Mrs. Miller had met her in February, 1975. At that time, Mrs. Miller worked for a travel company, and it was recommended that she contact Mrs. Lipe, because she might know of many people in her apartment building who would be interested in the company's services. The two women became close friends. Mrs. Miller regularly attended social gatherings at Mrs. Lipe's apartment building on behalf of the travel company. She often assisted Mrs. Lipe with her grocery shopping. Mrs. Lipe also visited the Miller home on a few occasions. They once took a Hawaiian vacation together, and they periodically exchanged gifts.

Mrs. Lipe and her daughter, Mrs. Burpee, each owned a one-half interest in a piece of property in Beaverton, which they decided to sell. Mrs. Burpee was interested in buying a new home, and she intended to apply her share of the proceeds toward that purchase. A sale of the property to a potential buyer for $94,000 failed, so Mrs. Lipe and Mrs. Burpee listed the property for sale for $100,000.

In January, 1980, Mrs. Lipe contacted the Millers and inquired whether they were interested in buying the property. They eventually agreed to buy it for $94,000. Mr. Miller prepared an earnest money agreement, setting a closing date of February 29, 1980, and it was signed by the Millers, Mrs. Lipe, and Mrs. Burpee. The Millers paid $1,000 as earnest money. At some point, Mrs. Burpee and Mrs. Lipe entered into an agreement whereby Mrs. Burpee would convey her interest in the property to Mrs. Lipe, who would then convey the property to the Millers.

When Mr. Miller signed the earnest money agreement, he believed the property was worth $94,000. He changed that opinion, however, when a realtor told him that it was worth only approximately $50,000. The Millers then met with

Mrs. Lipe at her apartment and told her that, in the light of that information, they could not go through with the purchase. According to the Millers, Mrs. Lipe said that she was interested only in raising enough money to allow Mrs. Burpee to purchase her new home and that she would sell the property to the Millers for that amount. They agreed on a sale price of $47,000. Mr. Miller claims that Mrs. Lipe told the Millers not to tell Mrs. Burpee about their new agreement. The Millers do not recall the exact date of that meeting, but Mr. Miller thought it took place in approximately the second week in February.

Mrs. Burpee's husband asserted that on February 13, Mr. Miller told him that they would not be able to meet the February 29 closing date specified in the earnest money agreement and that Mrs. Lipe would pay Mrs. Burpee $47,000 for her interest and would then collect from the Millers on an installment contract as soon as the Millers had arranged the financing. It is not clear whether this discussion occurred before or after the meeting between Mrs. Lipe and the Millers.

Mr. Miller, at some point, destroyed all the copies of the original earnest money agreement. Before February 22, 1980, Mrs. Burpee conveyed her interest in the property to Mrs. Lipe. On or about February 22, 1980, Mrs. Lipe conveyed the property to the Millers, for $47,000. A title company prepared the deed and closing documents.

On April 13, 1981, the Millers transferred the property to a third party for $26,911.50, plus other real property. Approximately five months later, that third party resold the property for $97,500. The Millers later sold the property that they had received from the third party for $120,000.

Plaintiff's complaint alleges that on or about February 21, 1980, defendants became indebted to Mrs. Lipe in the sum of $47,000 "for money had and received by the defendants for the use and benefit of Hazel P. Lipe." The prayer for relief seeks a judgment against defendants in that amount, plus interest. Plaintiff's theory is set forth in its brief:

"Plaintiff's underlying theory on the claim for money had and received is two-fold:

"A.   Defendants acquired the * * * property through their

confidential relationship with Mrs. Lipe and paid only one-half of the value of it.

"B.  Defendants had a written earnest money agreement with Mrs. Lipe and Mrs. Burpee that the Millers repudiated and paid only one-half the agreed purchase price."

The trial court found that there were no genuine issues of material fact, that plaintiff could not pursue its breach of contract theory because that theory was not pleaded, and that "if the parol evidence rule means anything, it's got to mean something here." It granted defendants' motion for summary judgment, and plaintiff appeals from the resulting judgment.

▆▆▆     Our scope of review was set forth in *Hodecker v. Butler,* 64 Or App 167, 170, 667 P2d 540 (1983):

"Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ORCP 47C; *Seeborg v. General Motors Corporation,* 284 Or 695, 588 P2d 1100 (1978). We review the record and draw all inferences from the pleadings, affidavits and other supporting material in the light most favorable to the party opposing the motion. *Uihlein v. Albertson's, Inc.,* 282 Or 631, 580 P2d 1014 (1978). This is also true as to those issues on which the opposing party would have the burden of proof at trial. *Seeborg v. General Motors Corporation, supra,* 284 Or at 699."

The fact issues that plaintiff asserts are raised in this case are not raised by the pleadings. Plaintiff did not plead any facts concerning either a confidential relationship between the Millers and Mrs. Lipe or a repudiation of the original earnest money agreement by the Millers. However, on a motion for summary judgment, the affidavits may raise issues that go beyond the pleadings if an amendment of a pleading to raise those issues would be warranted. *Hussey v. Huntsinger,* 72 Or App 565, 696 P2d 580 (1985). The trial court in its discretion, properly could have permitted plaintiff to amend its complaint to raise those issues had plaintiff moved to amend. *See* ORCP 23. Therefore, it is proper to consider those matters that go beyond the scope of the pleadings in this case. The parol evidence rule does not bar consideration of the evidence, because it is "evidence of the circumstances under which the agreement was made." *See* ORS 41.740. We hold that there exist genuine issues of material fact which preclude summary judgment.

■ The Supreme Court described the action for money had and received in *Smith v. Rubel,* 140 Or 422, 426, 13 P2d 1078 (1932):

"An action for money had and received, although an action at law, is governed by equitable principles. * * * The action is liberal in form and greatly favored by the courts. * * * The generally accepted test which determines whether a recovery may be had is whether the defendant, in equity and good conscience, is entitled to retain the money to which the plaintiff asserts claim. * * *" (Citations omitted.)

*See also Davis v. Tyee Industries, Inc.,* 295 Or 467, 668 P2d 1186 (1983). Although the general rule is that an action for money had and received is available when the defendant has received money, it may also be sustained when no money has actually passed, but something has been received as money or has been actually or presumptively converted into money before the action is brought. *See Powell et al. v. Sheets et al.,* 196 Or 682, 700, 251 P2d 108 (1952).

■ Plaintiff's first theory is that the Millers abused the confidential relationship between Mrs. Miller and Mrs. Lipe and exerted undue influence on Mrs. Lipe, convincing her to transfer the property to them for approximately one-half of its value and, therefore, in equity and good conscience, the Millers should pay the balance of the property's fair market value at the time of the transaction. When there is a confidential relationship between the grantor and the grantee, and suspicious circumstances exist, there is a presumption of undue influence, and the grantee must prove that the transaction was fair. *Penn v. Barrett,* 273 Or 471, 541 P2d 1282 (1975); *In re Reddaway's Estate,* 214 Or 410, 329 P2d 886 (1958). In this case, there are genuine issues of material fact concerning the existence of both undue influence and a confidential relationship.

■ Several factors may be considered in determining whether undue influence has been exercised. *Penn v. Barrett, supra; In re Reddaway's Estate, supra.* The first is whether the grantees took part in the procurement or the preparation of the deed. Here, a title company prepared the deed and other related documents, but Mr. Miller drove Mrs. Lipe to and from the title company for the signing of the deeds. The second is whether the grantor obtained any independent

advice. Mrs. Burpee's affidavit states that Mrs. Lipe did not. The third factor is the secrecy and haste surrounding the transaction. The Millers stated that Mrs. Lipe told them not to tell Mrs. Burpee about their new agreement. Furthermore, their new agreement was apparently reached in a relatively short amount of time compared to the time they took in reaching the original agreement for the sale of the property. The fourth factor is a change in attitude by the grantor towards others, and the fifth is a change in the decedent's plans to dispose of her property. There is no evidence concerning these factors in the record. The sixth factor is whether the property transfer was unjust or unnatural. There appears to be nothing unjust or unnatural about the transaction in this case, except that the consideration might be deemed inadequate. The next factor is the grantor's susceptiblilty to influence. The record shows that at the time of the transaction Mrs. Lipe was elderly, but mentally alert. However, her close friendship with Mrs. Miller may have rendered her susceptible to influence. The final factor is the adequacy of the consideration. Plaintiff claims the property was worth approximately $100,000; the Millers claim that it was worth about one-half of that amount.

■       Considering all these factors together, there is sufficient evidence to raise an issue as to whether Mrs. Lipe was subject to undue influence.

■       There existed also a factual question as to whether Mrs. Lipe and Mrs. Miller enjoyed a confidential relationship. A confidential relationship exists when there is confidence reposed on one side with a resulting superiority and influence on the other. It is characterized by the dominance by one in whom trust is reposed over the other. *Geiger v. Palmer,* 249 Or 123, 437 P2d 750 (1968); *In re Reddaway's Estate, supra; Doneen v. Craven, Executor et al,* 204 Or 512, 284 P2d 758 (1955). Mrs. Miller testified in her deposition that, at the time of the transaction involved here, she and Mrs. Lipe had a close personal friendship, that it was one of confidence and trust and that she believed it was a confidential relationship. In opposition to defendants' motion for summary judgment, plaintiff submitted the affidavit of a live-in nurse who cared for Mrs. Lipe after she suffered a stroke in September, 1981, until her death. She stated the following: Mrs. Miller visited Mrs. Lipe two to three times per week, sometimes bringing her

small gifts. Mrs. Miller always wheeled Mrs. Lipe into the den, asked not to be disturbed and closed the door. Mrs. Miller told the nurse never to interfere with any of their conversations. The nurse sometimes overheard their conversations. She heard Mrs. Miller tell Mrs. Lipe that she, Mrs. Miller, was all Mrs. Lipe had and that Mrs. Burpee was "no good." Mrs. Miller was helping Mrs. Lipe draft her will, and some of the notes the nurse found after their meetings stated that Mrs. Miller would receive certain items, such as a diamond necklace and china. Mrs. Lipe told the nurse that Mrs. Miller had told her that these gifts were to remain a secret and also that Mrs. Miller would be angry if Mrs. Lipe allowed someone else to prepare the will. Towards the end of her life, Mrs. Lipe became frightened of Mrs. Miller and no longer wanted to meet with her alone behind closed doors. The nurse believed that Mrs. Miller had Mrs. Lipe "under a spell" in the sense of dominating and manipulating her and trying to make her dependent on her.

■ ■  That evidence is sufficient to raise a fact question as to whether a confidential relationship existed at the time of the transaction involved here. Mrs. Miller's testimony is not conclusive proof that such a relationship existed, but it is some evidence that it did. Although the live-in nurse began to work for Mrs. Lipe a year and one-half after the transaction, and after Mrs. Lipe had suffered a stroke, which would naturally tend to make her more dependent on others, her testimony is probative of the ongoing relationship between Mrs. Miller and Mrs. Lipe.

■  With respect to plaintiff's breach of contract theory, there exists a fact question as to whether the Millers wrongfully repudiated the original contract or whether that agreement was rescinded by mutual agreement. Furthermore, there is conflicting evidence in the record as to whether Mrs. Lipe intended that the transfer of her interest in the property be a gift.

Reversed and remanded.