## FRED S. JAMES & CO. OF OREGON,
*Respondent,*

*v.*

## E. G. DOLL & CO.,
*Defendant,*

*and*

## GENERAL STAR INDEMNITY CO.,
aka "Genstar,"
*Appellant.*

(TC A8709-05500; CA A60669)

802 P2d 86

I. Franklin Hunsaker, Portland, argued the cause for appellant. With him on the briefs were Douglas G. Houser, Lisa E. Lear and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Jeffrey M. Batchelor, Portland, argued the cause for respondent. With him on the brief were Edwin A. Harnden, Tilman P. Hasche and Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant General Star Indemnity Co. (Genstar) appeals a judgment for $119,062.50 and prejudgment interest in an action that plaintiff filed against Genstar and defendant E. G. Doll & Co. (Doll) for money had and received. The court entered a default judgment against Doll. Thereafter, plaintiff filed an amended complaint alleging Genstar's joint and several liability with Doll. Both parties moved for summary judgment. The court granted plaintiff's motion and denied Genstar's motion. We affirm.

We review the evidence in the light most favorable to defendant and draw all reasonable inferences against plaintiff. *Stanfield v. Laccoarce,* 288 Or 659, 665, 607 P2d 177 (1980); *Walker v. City of Portland,* 71 Or App 693, 695, 693 P2d 1349 (1985). There are no genuine issues of material fact. Accordingly, we must decide whether plaintiff is entitled to judgment as a matter of law. ORCP 47; *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978).

Plaintiff, an independent insurance retailer, acts as an intermediary between insurance purchasers and insurance wholesalers. Doll, an insurance broker and wholesaler, acts as an intermediary between insurance retailers and insurance companies. Genstar is an insurance company that is not admitted to transact business in Oregon but sells surplus lines insurance.[1] In 1983, Genstar authorized Doll to solicit insurance business for it in Oregon and, if Genstar accepted the business, to issue a binder in Genstar's name that would provide coverage until the policy issued.

In 1985, plaintiff applied to Genstar through Doll for insurance coverage for its client, Reservation Ranch. Doll issued a binder that covered Reservation Ranch and named Genstar as the insurer. Reservation Ranch was dissatisfied with the terms and cost of the coverage and canceled it. Through Doll, plaintiff obtained short-term coverage from Genstar for its client. Subsequently, that coverage was extended. In the following year, plaintiff and Doll negotiated

---

[1] A nonadmitted insurance company does not have a certificate of authority issued by the Oregon Insurance Commissioner. The insurance it writes is called surplus lines insurance. A nonadmitted insurance company must place its insurance in Oregon through surplus lines agents. Doll was Genstar's surplus lines agent.

new terms for coverage, and Genstar issued a new insurance policy covering Reservation Ranch.

Doll billed plaintiff $119,062.50 for the canceled binder. Plaintiff paid that amount to Doll in December, 1985. In April, 1986, Doll billed plaintiff for the short-term policy and its extension and for the next year's coverage. It also credited plaintiff's account with payment for the canceled coverage. In August, 1986, plaintiff paid Doll's April bill. Plaintiff overlooked the credit, so it overpaid Doll $119,062.50 on the Reservation Ranch account. Doll did not return the overpayment or forward it to Genstar. Doll was liquidated in early 1987.

Defendant assigns as error that the court granted summary judgment for plaintiff and denied summary judgment to defendant. In *U.S. National Bank v. Miller,* 74 Or App 405, 410, 703 P2d 245 (1985), we stated that restitution is the remedy in an action for money had and received. In *Fleming v. Wineberg,* 253 Or 472, 482, 455 P2d 600 (1969), the court said:

> "Restitution is said to be applicable in any situation in which one person is accountable to another on the ground that otherwise one would unjustly benefit or the other would unjustly suffer loss."

In *Smith v. Rubel,* 140 Or 422, 426, 13 P2d 1078 (1932), also an action for money had and received, the court said:

> "[A] payment made under a mistake of fact which induces the belief that the other party is entitled to receive the payment when, in fact, the sum is neither legally nor morally due to him, may be recovered * * *."

There is no dispute but that plaintiff overpaid Doll by mistake and unjustly suffered a loss. The only question, therefore, is whether Genstar, which did not itself receive plaintiff's overpayment to Doll, is accountable to plaintiff for that payment. If Doll was Genstar's agent for collection of the premium that plaintiff paid, Genstar is liable. Genstar asserts that Doll was not its agent for collection of premiums, that it was not unjustly enriched, that it did not receive or retain anything of value that belonged to plaintiff and that it did nothing to cause plaintiff's loss.

Genstar authorized Doll to solicit insurance applications and to issue a binder in its name, if Genstar approved an

application. Doll also collected premiums from plaintiff on the Genstar policies that it sold and collected other premiums as well.[2] ORS 744.165(1) provides:

"[A]ny person who solicits or procures an application for insurance shall in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy and not the agent of the insured. Any provisions in the application and policy to the contrary are invalid and of no effect whatever."

Doll was Genstar's agent for collection of the premiums. *See Kabban v. Mackin,* 104 Or App 422, 801 P2d 883 (1990). When plaintiff paid Doll, it thereby also paid Genstar. *See U.S. Pipe v. Northwestern Agencies,* 284 Or 167, 585 P2d 691 (1978). Genstar, therefore, was unjustly enriched by the overpayment to Doll and is accountable to plaintiff for its loss. The court did not err when it granted the summary judgment.

■    Genstar also assigns as error that the court awarded plaintiff prejudgment interest. It argues that plaintiff did not plead or prove a statutory or contractual basis for recovery of prejudgment interest, because it did not plead or prove the existence of an account or contract between Genstar and plaintiff.[3] There is no dispute but that the amount that plaintiff claims is ascertained. *Public Market Co. v. Portland,* 171 Or 522, 625, 130 P2d 624, 138 P2d 916 (1943). ORS 82.010(1)(b) provides for interest at nine percent per year on

"[m]oney received to the use of another and retained beyond a reasonable time without the owner's express or implied consent."

---

[2] A December, 1985, letter from Genstar to Doll reprimands Doll for its slowness in forwarding premiums and notes that

"having 28.3% of premiums overdue at any one time is ludicrous and we have to address it directly."

The December, 1986, letter canceling the agency agreement reminds Doll:

"Naturally, you will be responsible for all premium payments due our office on past and future policies."

[3] Genstar raised this issue by a "motion for clarification" after the court had ruled on the cross-motions for summary judgment. The motion for clarification requested that the court strike plaintiff's claim for prejudgment interest. The court denied the motion. The issue of prejudgment interest was before the court when it ruled on the summary judgment motions. Genstar did not challenge plaintiff's claim for prejudgment interest at that time. Its motion for clarification is actually a motion to set aside the summary judgment.

Plaintiff pleaded and proved that Doll was the agent of Genstar. It also pleaded and proved the amount due from Genstar and the date from which it was due. *See Holman Transfer Co. v. PNB Telephone Co.*, 287 Or 387, 599 P2d 1115 (1979). That was enough. The court did not err.

Affirmed.