Filed: March 12, 1998

IN THE SUPREME COURT OF THE STATE OF OREGON

MARLYS V. ALDERMAN, now

known as VICKI ALDERMAN

FORELL,

 Respondent on Review,

 v.

CHRISTINE A. DAVIDSON AND

SHARON MALLORY,

 Petitioners on Review.

(CC 94-00184CV; CA A91510; SC S44089)

 On review from the Court of Appeals.*

 Argued and submitted September 9, 1997.

 Paul B. Heatherman, of Ray A. Babb & Associates, Bend,

argued the cause and filed the petition for petitioners on

review.

 Donald R. Crane, Klamath Falls, argued the cause and filed

the brief for respondent on review.

 Before Carson, Chief Justice, and Gillette, Van Hoomissen,

Graber, Durham, and Kulongoski, Justices.**

 GILLETTE, J.

 The decision of the Court of Appeals is affirmed in part and

reversed in part. The judgment of the circuit court is affirmed.

 *Appeal from Lake County Circuit Court,

Lane W. Simpson, Judge pro tempore.

146 Or App 282, 933 P2d 365 (1997).

 **Fadeley, J., retired January 31, 1998, and did not

participate in this decision.

 GILLETTE, J.

 In this action to foreclose real property, the issue

presented is whether seller's repeated acceptance of late

installment payments on the principal of a note constitutes a

waiver of seller's right to insist on buyer's timely payment of

taxes on the property to the local taxing authority. The trial

court held that such repeated acceptance of late payments does

constitute a waiver; it therefore dismissed the foreclosure

action. On an appeal by seller, the Court of Appeals reversed,

holding that, because seller did not accept late payments after

becoming aware of the default in the payment of taxes, she did

not waive that default. The Court of Appeals remanded with

instructions to enter a judgment of foreclosure. Alderman v.

Davidson, 146 Or App 282, 933 P2d 365 (1997). Although we accept

the legal propositions on which the Court of Appeals based its

ruling, we conclude that the Court of Appeals failed to give due

consideration to the legal import of all the undisputed facts

relevant to a determination of waiver. Giving those facts that

consideration, we reverse the decision of the Court of Appeals in

part and affirm the judgment of the circuit court.

 Pursuant to ORS 19.415(3), the Court of Appeals

reviewed the facts of this case de novo. This court also may

review the facts de novo, or we may limit our review to questions

of law. ORS 19.415(4). Because the facts relevant to the

resolution of the issue before us are not in dispute, we decline

to review the facts de novo. The following facts are taken from

the findings of the Court of Appeals and from additional

undisputed facts in the record. 

 Buyer purchased 120 acres of land in Lake County,

Oregon, from seller in 1989. Buyer signed a note for the $24,000

purchase price, under which she agreed to pay $200 on the ninth

of each month, and an additional $500 every other month on the

twentieth of that month, until the purchase price was paid in

full. In addition, to secure performance under the note, buyer

entered into a trust agreement pursuant to which she agreed, as

pertinent here, timely to pay the sums set forth in the note to

an escrow agent and "to pay all taxes, assessments and other

charges that may be levied or assessed upon or against said

property before any part of such taxes, assessments and other

charges become past due or delinquent and promptly deliver

receipts therefor to [seller]." The trust agreement further

provided that time was of the essence with respect to all

payments and performances required of the buyer under the

agreement. It granted seller the right to accelerate the balance

due under the note and to initiate foreclosure proceedings in the

event of a default by buyer in the payment of any indebtedness

secured by the trust agreement or in the performance of any other

agreement required in that document. Additionally, and

specifically with respect to a default in the obligation to pay

taxes, seller had the right under the trust agreement to elect to

pay the taxes herself and to add that amount to the balance due

under the note. Payment of an amount equal to the overdue taxes

then would be due and payable immediately without notice and, at

seller's option, buyer's failure to pay immediately could itself

be considered a default and would be grounds for accelerating the

entire balance due under the note.

 Virtually from the outset, buyer established a pattern

of late installment payments. Seller sent buyer several letters

over the years complaining about the practice, but continued to

accept the late payments. Buyer also neglected to pay taxes on

the property for the years 1990, 1991, 1992, and 1993 and,

obviously, could not have sent seller receipts for the payment of

taxes for any of those years, as required under the trust

agreement. 

 On January 28, 1994, seller sent a letter to buyer

notifying buyer that she was in arrears on the installment

payments and in the payment of taxes, both arrearages

constituting defaults under the trust agreement, and declaring

that all principal and interest payments due and owing under the

note, as well as the delinquent taxes, must be paid by March 1,

1994, or she would commence foreclosure proceedings. Seller sent

the letter by both certified and regular mail to buyer at a post-office box in Silver Lake, near where the property was located. 

It is undisputed that buyer never received that letter. 

 Seller contacted a lawyer in Lake County to represent

her in the foreclosure action. In April 1994, she met with a

lawyer there, who advised her to pay the back taxes on the

property. She made a partial payment at that time. Seller filed

a complaint for judicial foreclosure on May 16, 1994, alleging

default in the payment of installments on the note. On May 23,

1994, seller amended the complaint to include an allegation of

default in the nonpayment of taxes. Seller made an additional

payment on the taxes on May 25, 1994, which brought the taxes

current. 

 Meanwhile, buyer sent four installment payments to the

escrow agent in April and early May 1994 and actually brought the

account current on May 9, 1994, a few days before the original

complaint was filed. Seller had not notified the escrow agent

that she had declared buyer in default or directed the escrow

agent to stop accepting installment payments.(1) The escrow agent

promptly negotiated buyer's checks, subtracted its fees, and

forwarded the balance to seller. For her part, seller did not

negotiate immediately the checks that she received from the

escrow agent. Instead, she sent them to her lawyer, who held them

until approximately a month after the complaint was served on

buyer, and then returned them to seller with instructions that

she safely could cash them. Seller then cashed those checks. 

 Buyer also eventually sent a payment for the tax

arrearage to the tax assessor, but not until about two months

after being served with the complaint. The tax assessor informed

buyer that seller already had brought the taxes current and asked

her what to do with the excess payment. At buyer's direction,

the assessor issued a refund check to seller, which seller then

cashed. 

 At the conclusion of the trial in the matter, the trial

court held, simply, that, "[b]y accepting payments after the

notice of foreclosure, [seller] waived her right to foreclose." 

It also denied buyer's request for an award of attorney fees,

which she claimed were due her as the prevailing party. Buyer

appealed on the attorney fees issue, and seller cross-appealed,

assigning as error the trial court's failure to order foreclosure

under the trust agreement. 

 The Court of Appeals held that seller had waived the

"time is of the essence" clause with regard to buyer's obligation

to make timely installment payments on the note by accepting late

payments over the years and, therefore, was obligated to give

buyer a reasonable time to cure the default. Alderman, 146 Or

App at 286. That court held that seller's January 28, 1994,

letter to buyer was ineffective under the circumstances to

declare a default and accelerate the balance due. Ibid. The

court further held, however, that the seller's acceptance of late

installment payments did not constitute a waiver of the

requirement that buyer make timely tax payments, because seller

never accepted late installment payments with knowledge of that

other default. Id. at 289. The court held that the trust

agreement treats the timely payment of installments under the

note and the payment of taxes as distinct obligations, to each of

which the "time is of the essence" provision applies separately. 

According to the Court of Appeals, seller never waived the time-essence provision as to the obligation to pay taxes promptly and,

therefore, she had the right to initiate the foreclosure action

when she did. Id. at 289-90. 

 It is axiomatic that waiver is the voluntary

relinquishment of a known right. As the court stated as long ago

as Mitchell v. Hughes, 80 Or 574, 580-81, 157 P 965 (1916), 

 "'Waiver involves both knowledge and intention; an

estoppel may arise when there is no intention to

mislead. Waiver depends upon what one himself intends

to do; estoppel depends upon what he caused his

adversary to do[.]' In other words, waiver is a

voluntary act or declaration, whereby the waiver

surrenders some privilege or right."

(Citation omitted.) It follows that, as the Court of Appeals

correctly held, waiver of the right to enforce one provision of a

contract does not automatically waive the right to enforce

another. Only if the waiver intends such a consequence will a

court conclude that the right to enforce the second provision is

waived. 

 In this case, seller clearly waived the right to

require the prompt payment of installments under the note by her

repeated acceptance of late installment payments. Her conduct

demonstrated an intention to waive. Moreover, seller is estopped

from enforcing her right to prompt payments because buyer

reasonably relied, to her detriment, on seller's failure to

enforce the time-essence clause with regard to that obligation. 

In order to reinstate that clause with respect to buyer's

obligation to make timely installment payments, seller was

required to give buyer notice of her intention to insist on

strict compliance with the terms of the contract in the future,

and to allow a reasonable opportunity to cure past delinquencies. 

Soltis v. Liles, 275 Or 537, 542, 551 P2d 1297 (1976); Fisher v.

Tiffin, 275 Or 437, 440, 551 P2d 1061 (1976). Seller did not do

that and, therefore, she is precluded from declaring a default

based on late payment of installments under the note.

 Whether seller also lost her right to foreclose, based

on buyer's failure to pay taxes timely, is a separate question. 

Seller waived that right if, by accepting late installment

payments, she intended to waive that other default. Furthermore,

and even if she did not so intend, seller would be estopped if

buyer was induced thereby into reasonably believing that strict

compliance with the timely tax payment obligation was not

necessary. Conduct on the part of the seller that is

inconsistent with her exercise of the right to insist on strict

performance would be pertinent to both inquiries. 

 Before the Court of Appeals and the trial court, buyer

relied on the fact that seller accepted four late installment

payments after she wrote the January 1994 letter to buyer

purporting to invoke her right to accelerate and foreclose based,

in part, on the nonpayment of taxes, and before she filed the

foreclosure action in May 1994. Buyer argued that such

acceptance demonstrates seller's intent to waive the "time is of

the essence" provision with respect to the buyer's obligation to

pay the taxes. As noted, the trial court accepted that argument. 

The Court of Appeals disagreed, holding, without explanation,

that, 

 "so far as the record shows, [seller] did not know of

[buyer's] failure to pay taxes when she accepted late

payments. After learning of that default, [seller] did

not accept any further payments until after she filed

this lawsuit, in which she formally accelerated the

full amount owed. She did not act inconsistently with

her right to foreclose." 

Alderman, 146 Or App at 289. We do not agree with the legal

conclusions that the Court of Appeals drew from the undisputed

facts of this case in order to reach that result. 

 As a preliminary matter, it is undisputed that the

escrow agent accepted four installment payments on seller's

behalf between the time of the purported notice of default, in

which seller plainly acknowledged her awareness of buyer's

nonpayment of taxes, and the filing of the complaint for judicial

foreclosure. It is a fundamental tenet of agency law that

payment to an agent authorized to receive it is payment to the

principal. U.S. Pipe v. Northwestern Agencies, 284 Or 167, 171,

585 P2d 691 (1978); Schmidt et ux. v. Fitzsimmons et ux., 190 Or

415, 420-21, 226 P2d 304 (1951). Therefore, as a matter of law,

acceptance by the escrow agent (who was seller's agent) of

buyer's checks in April and May 1994 amounted to seller's

acceptance of those payments at a time when she had knowledge of

the default. That is true regardless of when, or even whether,

seller cashed the checks she received from the escrow agent. 

 We are, however, unwilling to hold that seller's

acceptance through her agent of four checks in April and May

1994, standing alone, demonstrates her intent to waive the "time

is of the essence" provision with respect to buyer's obligation

to pay the taxes promptly, or otherwise amounted to conduct

inconsistent with her right to enforce that obligation. After

sending the default letter, seller immediately began the process

of hiring a lawyer to handle the foreclosure action. Moreover, a

three-month delay in filing the complaint for judicial

foreclosure in the circumstances of this case -- where seller

lives several hours' drive from the area where the property is

located -- does not seem unreasonable. 

 Nor can we conclude that seller is estopped from

insisting on the prompt payment of taxes simply by virtue of her

acceptance of the late installment payments during that three-month period. It is undisputed that buyer never received

seller's January 1994 letter declaring a default for nonpayment

of taxes. She therefore was unaware of seller's heightened

concern about the delinquent taxes. Under the circumstances,

buyer was not somehow lulled into a false sense of security

regarding seller's failure to enforce the timely tax payment

obligation when the escrow agent cashed her installment checks in

April and May 1994. 

 Nevertheless, we are persuaded that seller did, by her

conduct over the years, waive the "time is of the essence"

provision in the trust agreement as it applies to buyer's

obligation to pay the taxes promptly when due and, further, that

seller is estopped from declaring a default on that basis without

providing buyer with both notice of her intention to insist on

strict compliance with the terms of the contract in the future

and a reasonable opportunity to cure the delinquency. The clause

in the trust agreement requiring buyer to pay the taxes on the

property also requires buyer "promptly [to] deliver receipts

therefor" to seller. It is undisputed that buyer never paid the

taxes on the property for the years 1990, 1991, 1992, and 1993.

It follows that buyer did not -- because she could not -- deliver

any tax receipts to seller during that time. 

 The only conceivable purpose behind a clause requiring

buyer to deliver tax receipts to seller is to notify seller that

the taxes have been paid. Because seller did not receive tax

receipts from as early as 1990, she had (at least) constructive

knowledge of the nonpayment, dating from that year and continuing

until January 28, 1994, at which time she demonstrated actual

knowledge of the default. During that entire four-year period,

seller accepted late installment payments from buyer with hardly

a complaint. That conduct collectively is inconsistent with

seller's insistence on strict performance of the terms of the

trust agreement and constitutes waiver of her right to foreclose

on the basis of nonpayment of taxes. Moreover, because buyer

reasonably relied to her detriment on seller's inaction over the

years, seller now is estopped from foreclosing on the basis of

that default without first giving buyer notice and a reasonable

opportunity to cure. 

 The decision of the Court of Appeals is affirmed in

part and reversed in part. The judgment of the circuit court is

affirmed.

1. Seller suggested in her brief before the Court of

Appeals that she did, indeed, attempt to cancel the escrow

account, albeit not until after the account was brought current

by buyer. She also suggested that the she did not have authority

under the escrow agreement to cancel the escrow account for any

reason other than default in the payment of installments under

the trust agreement. However, neither of the foregoing

propositions is supported by any documentation in the record. 

Because seller did not designate any of the trial court exhibits

as part of the record on appeal (as it was her obligation to do)

or attach pertinent documents to any of her appellate briefs, any

factual arguments that rely on documentary support must be

resolved against her. 

Return to previous location.