Argued September 11, affirmed December 29, 1978

# SEEBORG, *Appellant,*
## *v.*
# GENERAL MOTORS CORPORATION et al,
### *Respondents.*
## (No. CC 76-219, SC 25383)

588 P2d 1100

Jeanyse R. Snow of MacDonald, Dean, McAllister & Snow, Astoria, argued the cause and filed briefs for appellant.

E. Joseph Dean of Davies, Biggs, Strayer, Stoel and Boley, Portland, argued the cause for respondents. With him on the brief was Mervin W. Brink of Brink, Moore, Brink & Peterson, Hillsboro.

HOLMAN, J.

**HOLMAN, J.**

This is an action to recover for property damage resulting from the loss of an Oldsmobile automobile by fire. Plaintiff is the purchaser of the vehicle; defendants are the manufacturer, General Motors Corporation, and the dealer, Carmichael Oldsmobile, Inc. The action is based upon the theories of products liability and implied warranty of merchantability. After the pleadings were in issue, defendants moved for summary judgment based upon defendant General Motors' affidavit, plaintiff's deposition, and the provisions of the owners' manual delivered with the vehicle. Plaintiff filed no countering affidavits. He appeals from a granting of summary judgment in favor of defendants.

The following facts appear from plaintiff's deposition: plaintiff bought a new vehicle from Carmichael in November 1972. In January 1973 a fuse burned out. Plaintiff had the fuse replaced at a service station. Later, another fuse burned out and the same service station replaced that fuse as well as the cigarette lighter in an attempt to remove the problem. When another fuse burned out in April or May 1973, the service station put in a "heavier" and "stronger" fuse. After the stronger fuse was inserted, there were no more problems with fuses burning out. Plaintiff stated that when a fuse would burn out the interior courtesy lights, dashboard lights, gauge lights and the cigarette lighter would not work. The owners' manual which was an exhibit to defendant General Motors' affidavit, demonstrates that the lights mentioned are controlled not by one fused circuit but by two; one fused circuit controlled the cigarette lighter and the courtesy lights, and the other circuit controlled the dashboard and instrument lights.

During the time previously related plaintiff took the car twice to Carmichael for work on it. On the first trip the car was undercoated and an attempt was made to repair a leak in the trunk. The trunk continued to leak, whereupon plaintiff took the car back to Car-

michael. On one of these two trips plaintiff told Carmichael about the fuses' burning out and asked Carmichael to check the wiring to see if the leak in the trunk was causing the problem. There is no record of whether or not the wiring in the area of the leak was so checked. In any event, the trunk discontinued leaking after the second trip.

On July 3, 1973, plaintiff parked the vehicle in his driveway and it was totally destroyed by fire of unknown origin. The owners' manual contained the following warning: "Do not use fuses of higher amperage rating than those specified below." Plaintiff stated he was familiar with and had read the owners' manual. There is no evidence whether the last fuse which was inserted by the service station was of greater amperage than the limit provided in the manual, the only evidence being plaintiff's statement that it was "heavier" and "stronger" than that which came with the vehicle.

Oregon's summary judgment statute, ORS 18.105, provides in relevant part:

"* * * * *.

"(2) A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move, with or without supporting affidavits, for a summary judgment in his favor as to all or any part thereof.

"(3) * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *.

"(4) * * * When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If he does not so respond,

summary judgment, if appropriate, shall be entered against him."

■■ ORS 18.105 was "enacted to facilitate effective use of the court system by allowing for a quick, early and inexpensive method of determining whether the pleadings present a triable issue of fact." *Garrison v. Cook,* 280 Or 205, 209, 570 P2d 646 (1977). The party moving for summary judgment must establish that (1) there is no issue as to any material fact; and (2) he is entitled to judgment as a matter of law. If these requirements are met, the parties need not wait until trial but may seek a final adjudication of the action by motion. "In this way, dilatory tactics resulting from the assertion of unfounded claims or the interposition of specious denials or sham defenses can be defeated, parties may be accorded expeditious justice, and some of the pressure on court dockets may be alleviated." 10 Wright & Miller, Federal Practice and Procedure § 2712. But at the same time it must be remembered that a summary judgment motion goes to the merits of a case and, when granted, operates to merge or bar the cause of action for res judicata purposes. "Since its impact is rather drastic, summary judgment must be used with a due regard for its purposes and should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues." *Id.*

■■ The moving party has the burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. The record on summary judgment is viewed in the light most favorable to the party opposing the motion. *Uihlein v. Albertson's, Inc.,* 282 Or 631, 580 P2d 1014 (1978); *Taylor v. Baker,* 279 Or 139, 566 P2d 884 (1977); *Santilli v. State Farm,* 278 Or 53, 59, 562 P2d 965 (1977); *Forest Grove Brickworks v. Strickland,* 277 Or 81, 84-85, 87, 559 P2d 502 (1977). This is true even as to those issues upon which the opposing party would have the trial burden. 6 P.T. 2 Moore, Federal Practice § 56.23 (2d ed 1976).

Federal Rule of Civil Procedure 56(e), the model for ORS 18.105(4), was added in 1963 to overcome a line of cases, primarily in the Third Circuit, holding that well-pleaded allegations might be sufficient in and of themselves to create the required genuine issue of fact and prevent summary judgment without actually controverting the content of the affidavits or other evidence introduced by the moving party. These cases had been criticized because they effectively prevented the court from determining whether a genuine issue of fact actually existed, thus thwarting the purpose of summary judgment. They permitted a party to render the rule nugatory through clever pleading. 10 Wright & Miller, Federal Practice and Procedure § 2711.

■ In deciding whether a genuine issue of fact exists, courts generally read "genuine issue" to mean "triable issue." Before a party has a triable issue, he or she must have sufficient evidence to be entitled to a jury determination. This has led both courts and commentators to compare the motion for summary judgment to the motion for a directed verdict. 10 Wright & Miller, Federal Practice and Procedure § 2713.

■ Before a purchaser may recover upon a products liability cause of action he must demonstrate that at the time the product leaves the manufacturer's or seller's hands it is dangerously defective. Restatement (Second) of the Law of Torts § 402A(1)(a)[1] and comment (g); *Phillips v. Kimwood Machine Co.,* 269 Or 485, 491, 525 P2d 1033 (1974). There is little doubt in this case that since the vehicle did burn it was then in a dangerously defective condition. However, before plaintiff is entitled to a jury determination, there must be evidence from which it could be found that no change in the condition of the vehicle had been made from the time of its purchase which was essential to the cause of the loss. It was the contention of defend-

---

[1] "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability * * *."

ants that they were entitled to summary judgment because there had been an alteration in the vehicle since it was purchased and plaintiff could not demonstrate it was more probable than not that the change was immaterial to the vehicle's destruction; therefore, as a matter of law plaintiff could not recover.[2] Plaintiff contends that defendants were not entitled to summary judgment because they had not carried "their burden to show that the installation of the [stronger] fuse was the proximate cause of the fire. * * *"

Plaintiff mistakes the burden which defendants have in establishing their right to summary judgment. Defendants do not have to establish that the stronger fuse was the cause of the fire; what they do have to establish is that because of the installation of the stronger fuse plaintiff cannot carry his burden to show that there was no change in the vehicle which was essential to its destruction by fire and, thus, that it was dangerously defective at the time of its purchase. The two are not the same. All defendants have to show is that the admitted factual posture of the case is such that plaintiff would not be entitled to a jury determination. They have to show that the facts are insufficient to establish that the defective condition of the vehicle which caused its destruction was dangerous at the time it was sold.

The factual posture in this case presents a vehicle which burns after it has suffered numerous short circuits and a stronger fuse has been installed. We assume it is general knowledge that a common cause of fire is a short circuit in wiring and that this is the reason why fuses or other forms of circuit breakers are installed in vehicles, houses, and almost every place where electrical wiring is used. Had there been no

---

[2]Some cases speak of similar changes as being "misuse" of the product. This is a misnomer which can only confuse. The automobile continued to be used as an automobile. The issue raised is whether there was substantial change from the condition in which it was sold.

change in the vehicle the jury could infer that there was an unidentified defect in it at the time it was sold which caused it to burn, presuming that plaintiff would negative leaving in it a lighted cigarette or other form of fire extraneous to the vehicle itself. However, we do not have such a situation here, and no such inference can be drawn since plaintiff changed a safety feature, the purpose of which was to prevent short circuits from causing fire, in a vehicle having a record of short circuits.

Plaintiff points out that we do not know whether or not the stronger fuse inserted by him after purchase was of a higher amperage rating than that specified by the manual. This is true. Nor, on the other hand, do we know that it was not. If it was established that the fuse was of a greater amperage rating than that specified by the manual, it would be clear (given the record of short circuits and the absence of any other explanation) that the change in the fuse was most probably an essential cause of the fire but for which it would not have occurred.[3] In the present state of the proof it is just as likely that the change was to a greater amperage than that specified, than that it was not, and that the change was an essential cause of the fire. There is nothing to which one can point from which a jury would be able to make a decision one way or the other. Because of the provisions of ORS 18.105(4) plaintiff may not wait until trial if he has evidence favorable to his position on this subject. Instead, he must produce it at the hearing for summary judgment. The present state of the record does not entitle him to go to the jury when, in order to carry his burden, he must prove that it is more likely than not that the

_____

[3] Also, it has been suggested that plaintiff may be able to show that the insertion of a stronger fuse was not essential to the cause of the fire and that it is probable that short circuits would ultimately have destroyed the vehicle by fire in any event. Because of the recognized purpose for which fuses are used, if plaintiff had such proof he was obligated under ORS 18.105(4) to come forward with it by affidavit or deposition. He has not done so and we therefore must assume that such proof was unavailable to him.

vehicle's destruction was caused by a dangerously defective condition existing at the time of its purchase. In *Lea v. Gino's Pizza Inn,* 271 Or 682, 688, 534 P2d 179 (1975), *Arrow Trans v. Northwest Grocery,* 258 Or 363, 366, 482 P2d 519 (1971), and *Eitel v. Times, Inc.,* 221 Or 585, 352 P2d 485 (1960), we quoted the following language from 2 Harper and James, The Law of Torts § 19.4, at 1068:

> " 'The test is often expressed in this way: where from the facts most favorable to the plaintiff the nonexistence of the fact to be inferred [that there had been no change essential to the cause of fire] is just as probable as its existence (or more probable than its existence), the conclusion that it exists is a matter of speculation, surmise, and conjecture, and a jury will not be permitted to draw it. * * *' " (Bracketed material ours.)

Plaintiff contends that even if the change to a stronger fuse was a cause of the fire, it would be "error to hold as a matter of law that the change was of such a substantial character so as to break the chain of causation between the product defect and the resulting fire." There was evidence from which it could be found that the vehicle as purchased had defective wiring. However, it was not *dangerously* defective because the fuse was a fail-safe device designed to keep the vehicle from catching fire in the event of such a contingency and there was no evidence in plaintiff's deposition or by affidavit that the defective wiring could have caused the fire in the absence of the change to a stronger fuse.[4] If the stronger fuse was an essential cause of the fire, the vehicle became dangerously defective only when the fuse was changed. Although the vehicle could have been found to be defective at the time of manufacture, it could not have been found to be dangerously so until the stronger fuse was inserted by plaintiff and his service station.

Plaintiff also contends that it would be error to hold as a matter of law that defendants could not reason-

---

[4] *See* note 3 *supra.*

ably anticipate that a stronger fuse would be installed into the electrical system. Defendant manufacturer did so anticipate such action by purchasers in the event of wiring defects and, therefore, included a warning about such changes in its manual. Plaintiff admits he was familiar with the manual which he had read. Unless we are prepared to say, which we are not, that the situation was so dangerous that a warning is insufficient, we must hold that the warning was adequate to keep the original defect in the wiring from being dangerously defective because of the possibility of the insertion of a stronger fuse.

In some cases it has been held that a warning is inadequate because it does not inform the purchaser or user of the extent of the danger involved in ignoring the warning. In this case we believe it to be self-apparent to everyone that the warning relating to the amperage of the fuse was related to the purpose which fuses serve—the prevention of fire.

As to plaintiff's implied warranty cause of action, we will assume but not decide that privity of contract between plaintiff and the defendant General Motors is unnecessary. This is the best warranty position plaintiff could hope for. If privity and all accompanying contractual and sales rules are done away with, the same rationale would apply to its disposition as we have used in disposing of the products liability count because then both theories are essentially the same. 2 Frumer and Friedman, Products Liability, § 16A[4][a] (1978).

The judgment of the trial court is affirmed.