Argued and submitted January 8, reversed and remanded March 4, 1980

STANFIELD, et al,
*Respondents,*
*v.*
LACCOARCE, et ux,
*Petitioners,*

(CA 12007, SC 26358)

607 P2d 177

Randolph Slocum, of Slocum & Hill, Roseburg, argued the cause and filed briefs for petitioners.

James H. Spence, of Spence, O'Neal & Banta, Roseburg, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Tongue, Howell, Lent and Linde,** Justices.

HOWELL, J.

---

**Did not participate in this decision.

## HOWELL, J.

Plaintiffs filed this suit to foreclose a land sale contract. Plaintiffs are the assignees of the original vendors. The primary defendants are James *T.* and Pauline Laccoarce, who are the original vendees (hereinafter "vendees") and James *P.* and Judith Laccoarce (hereinafter "defendants"), the subpurchasers from James T. and Pauline Laccoarce. The trial court allowed plaintiff's motion for summary judgment against defendants and entered a decree of strict foreclosure. The Court of Appeals affirmed without opinion. We granted review.

It is difficult to piece together the facts from the pleadings in this confusing and complicated transaction.

In their complaint for foreclosure filed in September, 1977, plaintiffs alleged that they were assigned the interest of the original vendors in August, 1977; that the original vendees had entered into a conditional sale contract in September, 1967, to purchase the real property; that the vendees were in default in various particulars, including a failure to make payments when due; and that the vendees had sold the property to defendants without the permission required in the land sale contract. The complaint named the vendees and the defendants as party-defendants and also alleged that the defendants "have or claim to have some right, title or interest in the real property."

The vendees did not enter an appearance and an order of default was taken against them.

Defendants, however, filed an answer and cross-complaint. In the answer they admitted that they have an interest in the property, and they denied plaintiffs' allegations of default. In the cross-complaint, they attached a copy of a 1973 agreement between the vendees and themselves, they alleged that they have been assignees of the vendees since 1973, and they alleged that plaintiffs (and their predecessors) knew of

[661]

their assignment, accepted their payments, and waived any breaches of performance.[1] The cross-complaint also contained allegations of damages which are not material to the issue of strict foreclosure.

After the trial court allowed plaintiffs' motion to strike the cross-complaint, defendants filed an amended answer which was similar to the original answer, except that defendants alleged their claims for damages in separate counts. The trial court sustained plaintiffs' demurrer to the cross-complaint and to defendants' allegations that the plaintiffs knew of the assignment, accepted payments, and waived any breach.

Defendants filed a second amended answer and a cross-complaint, again alleging knowledge by plaintiffs of defendants' interest, acceptance of payments and waiver of any breaches. Again the trial court sustained plaintiffs' motion to strike or, in the alternative, to demur to the cross-complaint. The trial court explained, in a memorandum, that the agreement

---

[1] Paragraph IV of the answer states:

"That plaintiffs and their predecessors in interest have, at all times since February 2, 1973, been aware of said assignment * * * and have accepted payments from your answering defendants since said date; that the plaintiffs herein are, and have been, personally aware of your answering defendants' interests prior to the date of filing their complaint; that your answering defendants deny any breaches of the terms and conditions of the contracts attached to plaintiffs' complaint * * * and allege that, if any of the alleged breaches have occurred, plaintiffs and their predecessors in interest have, by their past actions, led your answering defendants to believe that the terms of said contracts would not be strictly enforced; that plaintiffs and their predecessors in interest have, through a consistent practice of ignoring past breaches such as those alleged in their complaint, permitted these answering defendants to rely on such course of conduct and have failed to give reasonable, or any, notice that they would insist on strict performance of the provisions of said contracts; that plaintiffs and their predecessors in interest have not given these answering defendants a reasonable, or any, opportunity to remedy any of said alleged breaches before filing the within suit to foreclose said contract; and that plaintiffs have suddenly and without fair notice, pounced upon the answering defendants, ousted them from possession, and attempted to cancel their rights under said contracts."

between defendants and the original vendees is not an assignment, but is a separate and distinct contract of sale. The trial court was of the opinion that, because defendants are not privy to the original contract, they had no rights as against the plaintiffs.

The next pleading appearing in the record is plaintiffs' motion for summary judgment based "upon ORS 18.105 and the records and files herein." Plaintiffs did not file any supporting documents. Defendants, however, filed an affidavit specifically denying the allegations in plaintiffs' complaint concerning breaches of the contract. Thereafter the trial court entered an order allowing the motion for summary judgment, entered an interlocutory decree of strict foreclosure, and subsequently entered a final decree of strict foreclosure.

When the trial court allowed plaintiffs' motion for summary judgment he stated in a memorandum that he did so for two independent reasons: (1) the defendants have "no standing to affirmatively contest the foreclosure of a contract to which they are not a party";[2] and (2) the "defendants have not, by an affidavit of denial, or otherwise, demonstrated there is a genuine issue of fact as required by ORS 18.105(4) and *Gleason v. International Multigoods* [ sic] *Corporation.* [282 Or 253, 577 P2d 931 (1978)]."

We disagree with the trial court's first reason for granting plaintiffs summary judgment. From the record it appears that the trial court's ruling was based on the erroneous assumption the defendant had no

___

[2] The court stated in its memorandum opinion:

"* * * First, the Court has, by prior rulings consistently held these Defendants are not parties, by assignment or otherwise, to the contract Plaintiffs seek to foreclose, and, therefore have no rights nor obligations under that contract. For this reason, they have no standing to assert affirmative defenses against these Plaintifffs as might be available to the original vendees as a party in contractual privity with these Plaintiffs. In short, the Court has held these Defendants sub-vendees and not assignees as they have alleged. In substance then, the Court has consistently held these Defendants only have recourse against the sub-vendors."

[663]

defense. Even if defendants are subpurchasers, and not assignees, they may contest the foreclosure of the original real estate contract. In their complaint plaintiffs named defendants as party-defendants in the suit, alleged that defendants had purchased the real property, and alleged that defendants have or claim to have some interest in the property. If we accept plaintiffs' allegations, then these defendants are entitled to contest the foreclosure suit because they are named party-defendants who claim an interest in the property. Furthermore, defendants alleged in their answers that plaintiffs had been aware of defendants' interest, had accepted payments from them for over four years, and had waived any breaches of the original contract. As party-defendants who claim an interest in the real property, these defendants are entitled to allege and prove these facts.[3]

The trial court should not have granted the motion for summary judgment on the grounds the defendants had no standing to resist the foreclosure. On remand the trial court should re-examine its rulings on plaintiffs' motions and demurrers based on this decision.

We also disagree with the trial court's second reason for granting summary judgment. The trial court applied ORS 18.105(4) which requires a party responding to a properly supported motion for summary judgment not to rest upon the mere allegations or denials of his pleading, but to set forth by affidavit

---

[3] Under the allegations contained in the pleadings, if plaintiffs had accepted late payments from defendants, then defendants may not be declared in default and the property may not be subject to foreclosure unless plaintiffs first give defendants notice and an opportunity to bring the payments up to date. *See, e.g., Fisher v. Tiffin,* 275 Or 437, 551 P2d 1061 (1976); *Soltis v. Liles,* 275 Or 537, 551 P2d 1297 (1976). In *Fisher* we stated:

"The law in this state is well established that, even when a contract contains a time-essence clause, a vendor who, through a consistent practice of accepting late payments, has permitted the purchaser to rely on this course of conduct must give reasonable notice that he will thereafter insist on strict performance of the contract provisions. The vendor must also give the purchaser a reasonable opportunity to bring the payments up to date before he is entitled to strict foreclosure. * * *." 275 Or at 440.

or otherwise specific facts showing that there is a genuine issue as to a material fact. The trial court relied on *Gleason v. International Multifoods Corp.*, 282 Or 253, 577 P2d 931 (1978).

The trial court's reliance on ORS 18.105(4) and on *Gleason* is misplaced. This court has previously noted that ORS 18.105(4) applies when the party moving for summary judgment has adequately supported his motion with affidavits or other material. *See Engelking v. Boyce*, 278 Or 237, 242, 563 P2d 703 (1977); *Pelege v. Chrysler*, 278 Or 223, 563 P2d 701 (1977). *See also First Nat. Bank v. Cities Service*, 391 US 253, 288-89, 88 S Ct 1575, 20 L Ed 2d 569 (1968); 10 Wright & Miller, Federal Practice and Procedure: Civil § 2739 (1973). In *Gleason* we applied ORS 18.105(4) because the party moving for summary judgment supported his motion by affidavit. *See* 282 Or at 258. In the instant case the plaintiffs did not support their motion for a summary judgment by affidavit or otherwise. ORS 18.105(4) therefore does not apply to the instant case.

Plaintiffs, the party moving for summary judgment, had the burden of showing that there are no genuine issues of material fact and that they were entitled to judgment as a matter of law. The record on summary judgment is viewed in the light most favorable to the party opposing the motion. *See Seeborg v. General Motors Corporation*, 284 Or 695, 588 P2d 1100 (1978); *Uihlein v. Albertson's, Inc.*, 282 Or 631, 580 P2d 1014 (1978); *Santilli v. State Farm*, 278 Or 53, 59, 562 P2d 965 (1977). *See also United States v. Diebold, Inc.*, 369 US 654, 82 S Ct 993, 8 L Ed 2d 176 (1962); 10 Wright & Miller, *supra,* § 2716.

In the instant case the plaintiffs filed no supporting material but merely rested on their pleadings.[4]

---

[4] The court heard testimony from several witnesses for the plaintiffs at the hearing on the motion for summary judgment. The trial court later ruled, however, that the taking of testimony was improper and that such testimony would not be considered on the motion for summary judgment.

Defendants, however, did not rely solely upon their answer, which had denied the allegations of the complaint and had alleged payments by them accepted by plaintiffs, but went further and filed an affidavit in opposition to the motion for summary judgment. The affidavit stated that they specifically denied the allegations of breaches made in paragraph IV in the complaint. We believe that an issue of fact was created and that the matters should not have been decided on the motion for summary judgment.[5]

Reversed and remanded.

---

[5] We believe it is appropriate to note the number of cases coming before the appellate courts on allowance of motions for summary judgment. In that connection we believe that it is also appropriate to quote the language of Justice Holman in *Seeborg v. General Motors Corporation*, 284 Or 695, 588 P2d 1100 (1979):

"ORS 18.105 was 'enacted to facilitate effective use of the court system by allowing for a quick, early and inexpensive method of determining whether the pleadings present a triable issue of fact.' *Garrison v. Cook*, 280 Or 205, 209, 570 P2d 646 (1977). The party moving for summary judgment must establish that (1) there is no issue as to any material fact; and (2) he is entitled to judgment as a matter of law. If these requirements are met, the parties need not wait until trial but may seek a final adjudication of the action by motion. 'In this way, dilatory tactics resulting from the assertion of unfounded claims or the interposition of specious denials or sham defenses can be defeated, parties may be accorded expeditious justice, and some of the pressure on court dockets may be alleviated.' 10 Wright & Miller, Federal Practice and Procedure § 2712. But at the same time it must be remembered that a summary judgment motion goes to the merits of a case and, when granted, operates to merge or bar the cause of action for res judicata purposes. 'Since its impact is rather drastic, summary judgment must be used with a due regard for its purposes and should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues.' *Id.*" 284 Or at 699.