Argued and submitted October 31, 1988, reversed and remanded May 10, 1989

## C. E. THOMPSON, INC., et al,
*Appellants,*

*v.*

## RAX RESTAURANTS OF PORTLAND, INC., et al,
*Respondents.*

(A8605-03031; CA A46972)

772 P2d 1388

David A. Urman, Portland, argued the cause for appellants. With him on the briefs were Jacob Tanzer and Ball, Janik & Novak, Portland.

Jack D. Hoffman, Portland, argued the cause for respondents. On the brief were G. Kenneth Shiroishi and Dunn, Carney, Allen, Higgins & Tongue, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiffs appeal a summary judgment for defendants in this action to enforce a restrictive covenant. We reverse and remand.

These facts are undisputed. Plaintiffs, other than Restaurant Management Northwest, Inc. (Restaurant Management), are owners and lessors of real property in Portland (the Burger King property). They acquired that property in 1974 by a deed that contained a restrictive covenant in favor of the Burger King property that encumbered other property that the grantor owned and retained, including the adjacent property. The covenant provided:

> "Grantor agrees not to construct or operate a free-standing building for a *hamburger franchise business* on any of the land described on Schedule A attached hereto (which is by this reference incorporated herein) that is now owned by grantor. But such restriction specifically shall not prevent establishment of a hamburger franchise business within the shopping center complex now existing on a part of said land, nor within any future expansion of said shopping center complex, and it specifically shall not prevent construction and/or operation on any part of said land of any type of food service business other than a *hamburger franchise.* This restriction shall be a covenant running with said land for the benefit of Grantee and any subsequent owner of the above-granted premises, and this restriction shall automatically terminate if the above-granted premises has not been developed as, and is not then operating as, a *hamburger franchise* by January 1, 1975, and it shall automatically terminate at any time thereafter that the owner of the above-granted premises ceases to operate it as a *hamburger franchise.*" (Emphasis supplied.)

Contemporaneously, lessors leased the Burger King property to the predecessor in interest of Restaurant Management, which, in 1974, acquired the lessee's interest. Lessors agreed to build a Burger King restaurant (the Burger King) on the property. From 1974, Restaurant Management has operated the Burger King.[1] It is undisputed that lessors satisfied the covenant requirement that they operate a "hamburger franchise" on the Burger King property and that the Burger King

---

[1] It is not disputed that lessor plaintiffs constructed the restaurant by January 1, 1975.

is a "hamburger franchise business." Plaintiffs also acknowledge that "[a] primary source of income generated by the operation of the Burger King Restaurant is the sale of hamburgers."[2]

In 1983, defendant Rax Restaurants of Portland, Inc. (Rax) acquired the adjacent property, on which it has operated a Rax Restaurant under a franchise from defendant Rax Restaurants, Inc., a national chain of fast-food restaurants. The deed to Rax recited that the property was subject to the 1974 covenant. Since 1983, Rax has offered a varied menu at the Rax Restaurant, which has not included hamburgers.

In 1986, Rax Restaurants, Inc., announced that restaurants in the national chain would begin to sell hamburgers. Under its franchise, Rax has the option to add hamburgers to its menu at the Rax Restaurant, but it has not yet done so. Plaintiffs filed this action to enjoin defendants from selling any hamburgers at the Rax Restaurant.

Defendants moved for summary judgment on the ground that the term "hamburger franchise business" is unambiguous and does not apply to the Rax Restaurant and that there was no genuine issue of material fact. The court granted the motion. Its order stated:

> "The court has determined that the language 'hamburger franchise business' used in the restrictive covenant is unambiguous and that the restrictive covenant does not apply to the defendants and, therefore, the defendants prevail."

It entered judgment for defendants and dismissed plaintiffs' complaint with prejudice.

Defendants' affidavits described the Rax chain as a varied menu, fast-food chain. Its principal menu items are roast beef sandwiches and an extensive salad bar, which are sold in the national chain on approximately 70.8% and 27.3% of the "eater occasions," respectively. The chain also offers turkey, chicken and ham sandwiches, "Mexican" food items and a "Pasta Bar." It introduced the hamburger as an alternative menu item, but it has not advertised itself as a "hamburger" business either before or after introducing its

---

[2] The court that issued the preliminary injunction found, after a hearing, that the sale of hamburgers was the primary source of income for the Burger King.

hamburger. Between December, 1986, and February, 1987, hamburgers were sold on only 5.3% of the eater occasions. Two marketing study groups have categorized the chain as either an "other sandwich" or a "varied fast-food" chain. Defendants knew of no market survey that categorized the Rax Restaurant chain as a "hamburger" chain. Their affidavits state that, nationally, hamburgers were eaten on 68.9% of the eater occasions at Burger King restaurants and that the two marketing study groups have categorized the Burger King chain as a "hamburger" chain. Defendants state that they intend nationally to continue to sell the hamburger as an "alternative" menu item, to continue to offer a "varied" menu and not to advertise themselves as a "hamburger" chain. They do not state what specific plans they have for the sale of hamburgers at the Rax Restaurant.

Defendants assert here that "hamburger franchise business" refers to the Burger King or a similar franchise business that principally features hamburgers, which would exclude the Rax Restaurant. They assert that the Rax Restaurant would offer hamburgers only as a single item on the menu among a large selection of "entrees." To bolster their argument, defendants point to the provision in the covenant that it would terminate if lessor did not develop or operate a "hamburger franchise" on the Burger King property by January 1, 1975, or if the owner ceased to operate the premises as a "hamburger franchise business." Accordingly, they assert that, because the covenant did not terminate, "hamburger franchise" must refer to a restaurant that is the equivalent of the Burger King.

One of plaintiffs' affidavits asserts that, throughout the negotiations with grantor, plaintiffs "made it clear that the sale of property was contingent upon there being a restrictive covenant insuring that plaintiffs would have the exclusive right to sell hamburgers on the grantor's property." The affidavit asserts that "the restrictive covenant was intended to apply to the sale of any hamburgers" and that "the purpose of the restrictive covenant was to exclude all franchises that sold hamburgers to the public." It further asserts that "at no time did the parties contemplate that the restrictive covenant would apply solely to entities which engage principally in the sale of hamburgers." It also states

that defendants advised plaintiffs that they intended to commence selling hamburgers at the Rax Restaurant. Plaintiffs also submitted an affidavit that states:

> "Pursuant to ORCP 47E., plaintiffs intend to call as a witness at trial a qualified expert who will testify as to the industry custom or usage concerning the term 'hamburger franchise business.' Plaintiffs' expert will controvert the data set forth in defendants' motion for summary judgment, particularly as it relates to Burger King operations in the Portland metropolitan area."

Plaintiffs argue here that the restriction unambiguously bars defendants from selling *any* hamburgers at the Rax Restaurant. They argue that the circumstances under which the restrictive covenant was negotiated show that plaintiffs intended to have the exclusive right to sell hamburgers on the property subject to the covenant. Alternatively, they assert that, because reasonable people may interpret the phrase "hamburger franchise business" differently, it is ambiguous and the intent of the grantor and plaintiffs is a genuine issue of material fact. Finally, they assert that, even if the covenant refers to a franchise business that primarily sells hamburgers, there is a genuine issue of material fact covering how many hamburgers the Rax Restaurant will sell.

The court erred in granting summary judgment for defendants. There are genuine issues of material fact as to the meaning of the term "hamburger franchise business," as applied to a restaurant, and, therefore, of the meaning of the covenant. Of course, whether a covenant is ambiguous is a question of law for the court. *Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 643, 576 P2d 1244 (1978). "Hamburger franchise business" is a term that

> "is ambiguous if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person." *Deerfield Commodities v. Nerco, Inc.,* 72 Or App 305, 317, 696 P2d 1096 (1985).

Evidence of the circumstances surrounding the negotiation of the covenant may help us to construe the meaning of

the term "hamburger franchise business." ORS 42.220;[3] *Welch v. U.S. Bancorp,* 286 Or 673, 690, 596 P2d 947 (1979). The circumstances show, and no one disputes, that the purpose of the covenant is to protect the Burger King from competition from grantor's adjacent property. Accordingly, we conclude that, contrary to plaintiffs' assertion, the covenant does *not* bar a franchise restaurant on the adjacent property that sells even one hamburger. That "competition" would be *de minimus.* Moreover, we cannot conceive of why the covenant would state that it bars a "hamburger franchise business" on the adjacent property if it simply bars a business that sells one hamburger.

The circumstances surrounding the negotiations *do* show that the covenant *at least* bars a franchise restaurant on the grantor's adjacent property that is similar to or the equivalent of a Burger King and principally features hamburgers. On the other hand, they do *not* show whether the covenant also bars a franchise restaurant that sells hamburgers in numbers large enough to compete with the Burger King, even though that restaurant would not principally feature hamburgers. Accordingly, the covenant has more than one sensible and reasonable interpretation. Furthermore, if the covenant bars a franchise restaurant that sells hamburgers in numbers large enough to compete with the Burger King, an additional material factual issue would be whether defendants would sell enough hamburgers at the Rax Restaurant to violate the covenant. Defendants' affidavits describe the menu of the national Rax Restaurant chain and show that, nationally, hamburgers make up a small percentage of its sales. They do not state in what quantity defendants intend to sell hamburgers at the Rax Restaurant.[4]

Defendants also assert that the term "hamburger franchise business," as applied to a franchise restaurant, has a single industry usage, or "peculiar signification," ORS 42.250—a restaurant that principally features hamburgers.

---

[3] ORS 42.220 provides:

"In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

[4] We construe the affidavits most favorably to plaintiffs. *See Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978).

Plaintiffs' affidavit under ORCP 47E, however, states that they will call an expert witness to testify to the industry usage of the term and to contest defendants' data. Accordingly, whether there is, and what is, the "peculiar signification" of the term are genuine issues of material fact. Depending on the resolution of these issues, it may also be necessary to know the intent of the parties to the original deed to resolve the resulting ambiguity. Defendants have not shown as an undisputed fact what that intent was and that it is favorable to the position that they urge.

Reversed and remanded.