Argued and submitted March 15, reversed and remanded May 31, petition for review
denied September 26, 1995 (322 Or 167)

## HAYDEN CORPORATION,
a Delaware corporation,
*Appellant,*

*v.*

## GLACIER PARK COMPANY,
a Delaware corporation, and
Glacier Park Riverpoint Company,
a Delaware corporation,
*Respondents.*

(9309-05667; CA A84751)

896 P2d 604

Thomas W. Sondag argued the cause for appellant. With him on the briefs was Lane Powell Spears Lubersky.

John F. McGrory, Jr., argued the cause for respondents. With him on the brief was Davis Wright Tremaine.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

### HASELTON, J.

Plaintiff, Hayden Corporation, appeals from a judgment, following the granting of summary judgment against its claims for fraud and breach of contract, and from a related supplemental judgment for attorney fees and costs. We reverse and remand.

In August 1988, plaintiff and defendant Glacier Park Riverpoint Company,[1] entered into a joint venture agreement to develop a 41-acre parcel of property called Riverpoint I in Spokane, Washington.[2] Under the terms of the agreement, defendant contributed the real property, which was then recorded in the name of the joint venture, plaintiff managed the project, and the parties generally shared development costs. The agreement also required defendant to pay the real property's Local Improvement District (LID) assessment, which constituted a lien on the property until paid. Plaintiff paid defendant $150,000 "in consideration for the payment and satisfaction by [defendant] of the [LID assessment]." Rather than paying the LID assessment in a lump sum, defendant elected, with plaintiff's knowledge, to pay it in installments. Initially, the City of Spokane sent the LID assessment bills to plaintiff, who then forwarded them to defendant, but later the city billed defendant directly.

In 1992, the parties had a falling out, which they resolved by entering into a written "Assignment of Interest in Partnership," in which defendant agreed to assign to plaintiff its "venture interest"[3] in the joint venture. In paragraph 1 of that agreement, defendant represented and warranted that,

"to the best of [defendant's] knowledge after reasonable inquiry, there are no outstanding liens or claims against the

---

[1] Both Glacier Park Company and Glacier Park Riverpoint Company (Riverpoint) are defendants and parties on appeal. Glacier Park Company created Riverpoint for the project at issue here. For ease of reference, "defendant" refers to Riverpoint.

[2] The facts are presented in the light most favorable to plaintiff, as the nonmoving party. *Willamette Dental Group v. Oregon Dental Service*, 130 Or App 487, 489, 882 P2d 637 (1994).

[3] The assignment agreement defined "venture interest" as defendant's "entire right, title and interest" in the joint venture.

Venture Interest (other than the Joint Venture Debt or other Joint Venture Obligations)[.]"[4]

In paragraph 5.3, plaintiff also released defendant from

> "any and all claims, demands, actions, causes of action, debts, contracts, liabilities, agreements, or losses of any type, whether known or unknown, fixed or contingent, with respect to the obligations, acts, or omissions of [defendant] occurring prior to the date of this agreement and relating to or arising out of their respective involvement with the Joint Venture[.]"

At the time the parties executed the assignment agreement, the unpaid balance on the LID assessment exceeded $200,000. The joint venture's real property was, in turn, subject to a lien in that amount. After the assignment, defendant began forwarding the LID assessment bills to plaintiff for payment. Plaintiff demanded that defendant make the payments, and, when defendant refused, plaintiff brought this action.

Plaintiff alleged that defendant both breached the original joint venture agreement by not continuing to make the LID assessment payments and committed fraud by misrepresenting "that there were no liens or claims against the property commonly known as Riverpoint I" and by "failing to disclose that [defendant] failed to pay the LID assessment." Defendant moved for summary judgment, arguing that the release in paragraph 5.3 of the assignment agreement barred plaintiff's contract claim. With respect to the fraud claim, defendant argued that it had made no representations as to liens on the real property and had no duty to disclose the outstanding LID assessment balance. The trial court, without elaboration, granted defendant's motion for summary judgment and entered a judgment dismissing plaintiff's claims. Subsequently, the court entered a supplemental judgment awarding defendant $40,686.07 in contractually based prevailing party attorney fees and costs. Plaintiff appealed from the judgment and filed an amended notice of appeal from the supplemental judgment.

---

[4] The assignment agreement defined "Joint Venture Debt" as a 1988 construction loan made to the joint venture. The agreement does not define "other Joint Venture obligations."

We turn to plaintiff's fraud claim. The propriety of summary judgment against that claim depends principally on the disposition of two subsidiary issues: (1) Was defendant's warranty in paragraph 1 of the assignment agreement an actionable representation that, to the best of defendant's knowledge, there were no claims against defendant's interest in the partnership real property? (2) If so, was there, at least, a disputed factual issue regarding the reasonableness of plaintiff's reliance on that representation?[5]

■     With respect to the first issue, plaintiff argues that, under both Washington law[6] and the assignment agreement, defendant's "venture interest" included defendant's interest in the partnership's real property. Thus, plaintiff reasons, defendant's warranty that its venture interest was unencumbered was a representation that its interest in partnership real property was not subject to liens or claims. Plaintiff asserts that that representation was false in that the LID lien against the partnership's real property necessarily constituted a claim against defendant's interest in that property.

Defendant counters that plaintiff reads the warranty too broadly and that it pertains, instead, only to liens or claims against defendant's individual interest in partnership income and surplus. Defendant asserts that its reading accords with what it contends was the warranty's purpose — to give plaintiff assurance "that [defendant] had not assigned its joint venture interest to its bank, or sold its interest or otherwise assigned or pledged the income from it." Defendant finally asserts that, in all events,

> "[t]here is simply no way that an encumbrance on [defendant's] partnership interest could have included a lien or claim on the real property owned by the partnership. * * * [Defendant's] rights in the real property could not have been encumbered by virtue of a claim or lien against [defendant's] partnership interest."

---

[5] Defendant also argued, in conclusory fashion, that plaintiff failed to "show" defendant's intent to defraud. That argument, which mistakes the movant's burden in seeking summary judgment warrants no discussion. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978)

[6] Both parties agree that, as provided in paragraph 7.4 of the assignment agreement, Washington law controls this dispute.

■ We agree with plaintiff that defendant's construction cannot be squared with either the warranty's plain language or with Washington partnership law. Defendant acknowledges that it intended to transfer its entire bundle of property rights in the joint venture to plaintiff. That intent is evident in the parties' definition of "venture interest" — defendant's "entire right, title and interest" in the joint venture. *See* n 3 above. Under Washington partnership law, a partner's property rights in a partnership include

> "(1) *his rights in specific partnership property*, (2) his interest in the partnership, and (3) his right to participate in the management." RCW 25.04.240. (Emphasis supplied.)

Thus, defendant's warranty, which expressly referred to its "venture interest," included not only its right to profits and surplus,[7] but also its rights in specific partnership property. Any lien against partnership real property concomitantly encumbered, and represented a claim against, defendant's joint venture interest in such property. RCW 25.04.250(1) and (2)(c) provides, in part:

> "(1)   A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.
>
> "(2)   The incidents of this tenancy are such that:
>
> "* * * * *
>
> "(c)   A partner's right in specific partnership property is not subject to attachment or execution, *except on a claim against the partnership*." (Emphasis supplied.)

The outstanding LID assessment represented a "claim against the partnership" within the meaning of RCW 25.04.250(2)(c), rendering defendant's interest in the property subject to attachment or execution. Consequently, unless defendant can demonstrate that the warranty was, in fact, given to "the best of its knowledge after reasonable inquiry," that warranty embodied an actionable misrepresentation.[8]

---

[7] The "interest in the partnership" consists of a partner's share of profits and surplus. RCW 25.04.260.

[8] In moving for summary judgment, defendant did not contend that, as a matter of undisputed fact, the warranty was given "to the best of its knowledge after reasonable inquiry." Nor did defendant argue that the LID assessment constituted "Joint Venture Debt or other Joint Venture Obligations" within the meaning of paragraph 1 of the assignment agreement.

■ Defendant argues, alternatively, that summary judgment against plaintiff's fraud claim was warranted because, as a matter of uncontroverted fact, plaintiff had no right to rely on the representation and was not ignorant of its falsity. Our review of the "uncontroverted" evidence on which defendant relies persuades us that that evidence is reasonably susceptible to differing interpretations.[9] We note, moreover, that a party to whom an express warranty has been made is entitled to rely on that warranty without further investigation. *Douglas Northwest v. Bill O'Brien & Sons*, 64 Wash App 661, 679-80, 828 P2d 565, 577 (1992). We conclude that the court erred in entering summary judgment against plaintiff's fraud claim.

For related reasons, the trial court also erred in granting summary judgment against plaintiff's breach of contract claim. In seeking summary judgment, defendant asserted that, as a matter of law, the release provision, paragraph 5.3 of the assignment agreement, barred plaintiff's claim that defendant had breached the original joint venture agreement by failing to pay the LID assessments. The trial court apparently concurred. However, we agree with plaintiff that if the warranty embodied in paragraph 1 of the assignment agreement was fraudulently given, defendant "breached its own obligation in the same agreement to transfer an unencumbered property interest to [plaintiff]." That breach would, in turn, be so material as to preclude defendant's enforcement of the release provision. *Parsons Supply, Inc. v. Smith*, 22 Wash App 520, 522, 591 P2d 821, 823 (1979). Consequently, the factual issues that preclude summary judgment on plaintiff's fraud claim similarly preclude summary judgment on the breach of contract claim.

Finally, because we have reversed the summary judgment, which was the predicate for the trial court's supplemental judgment awarding fees and costs, we reverse the supplemental judgment as well.

Reversed and remanded on judgment and supplemental judgment.

---

[9] For example, defendant invokes the deposition testimony of plaintiff's principal, Jim Edwards, which it claims shows that plaintiff knew the LID assessment had not been paid, but simply forgot about it during negotiations. Read in context, that testimony may also be reasonably viewed as evidence that plaintiff knew the LID assessment would constitute a lien until paid, but did not know that defendant had not paid it.