Jack ENSLEY, as Personal Representative of the Estate of Benjamin M. Ensley, for the benefit of the statutory, Plaintiff,

v.

STRATO–LIFT, INC., a.k.a. Strato–Lift & Boom, Inc., a foreign corporation, Strato–Lift International Corporation, and Star Industries, Inc., d/b/a/ Star Rentals, a foreign corporation, Defendants.

No. CV–00–269–HU.

United States District Court,
D. Oregon.

Feb. 15, 2001.

Jeffrey A. Bowersox, Bowersox Law Firm, Lake Oswego, OR, for Plaintiff.

Roger K. Stroup, Bodyfelt Mount Stroup & Chamberlain Portland, OR, for Defendants Strato–Lift, Inc. and Strato–Lift International Corporation.

James Hibbard, Scott Brooksby, I. Franklin Hunsaker, Bullivant Houser Bailey, Portland, OR, for Defendant Star Industries, Inc.

## OPINION & ORDER

HUBEL, United States Magistrate Judge.

Plaintiff Jack Ensley, as personal representative of the estate of Benjamin Ensley, brings this products liability and negligence action against defendants Strato–Lift, Inc., Strato–Lift International Corporation, and Star Industries, Inc. The case concerns a February 1999 industrial acci-

dent involving a platform lift, which resulted in the death of Benjamin Ensley ("Ensley"), plaintiff's son.

In an Opinion and Order filed October 6, 2000, I denied Strato–Lift's motion for summary judgment. At the time Strato–Lift moved for summary judgment, the other defendants had not yet been named. Now that they have been added to the case, Star Industries moves for summary judgment, adopting and incorporating the arguments raised by Strato–Lift in its previously adjudicated motion. Additionally, both Strato–Lift and Star Industries move for reconsideration of the October 6, 2000 Opinion and Order. Finally, all defendants jointly move for an order certifying a question to the Oregon Supreme Court. For the reasons explained below, although I grant Star Industries's and Strato–Lift's motions for reconsideration, upon reconsideration I deny Star Industries's motion for summary judgment and adhere to the original denial of Strato–Lift's motion for summary judgment. Additionally, I deny defendants' joint motion for certification.

## I. Motions for Reconsideration

The issues raised in Strato–Lift's summary judgment motion concern whether plaintiff can sustain his summary judgment burden given the undisputed evidence that the lift was modified before Ensley's death, possibly by Ensley himself. The heart of my previous discussion of the issue is found at pages eleven through seventeen of the October 6, 2000 Opinion and Order.

There, I explained that as part of plaintiff's prima facie case, plaintiff must show that the product was dangerously defective when it left the seller or manufacturer's hands, *and* that it is more likely than not that a modification made to the product was not essential to the cause of the injury. *See* Oct. 6, 2000 Opinion and Order at p. 11 (citing *Seeborg v. General Motors*

*Corp.,* 284 Or. 695, 588 P.2d 1100 (1978)). Thus, I interpreted *Seeborg* as establishing a two-fold prima facie burden for plaintiffs in products liability cases which involve evidence of a post-sale modification: first, to show a dangerous defect at the time the product left the manufacturer's or seller's hands, and second, to show that it was more likely than not that the modification was not essential to the cause of injury.

As a result of this interpretation, I could not reconcile the second part of that prima facie burden with Oregon Revised Statute § (O.R.S.) 30.915. Oct. 6, 2000 Opinion and Order at pp. 12–15. I concluded that the portion of *Seeborg* that Strato–Lift suggested requires a plaintiff, as part of his or her prima facie case, to establish that it is more likely than not that any post-delivery modification was not essential to the injury or accident, could not survive O.R.S. 30.915, which went into effect after the factual events involved in *Seeborg* had occurred.

It is this particular holding that Strato–Lift and Star Industries urge me to reconsider. Upon reconsideration, I conclude that my earlier analysis went unnecessarily beyond what was required to decide the issue presented. Thus, for the purposes of this case, I conclude that the holding in the previous Opinion and Order that certain portions of *Seeborg* are irreconcilable with O.R.S. 30.915, was superfluous.

■ Upon rereading *Seeborg* and studying the arguments presented in the motions both initially and upon reconsideration, I conclude that *Seeborg* is capable of two interpretations. One interpretation is the one I previously followed in the earlier Opinion and Order, which requires two distinct prima facie burdens for a plaintiff in a products liability case involving a product modification. Another interpretation, and one I discussed at pages sixteen and seventeen of the October 6, 2000 Opin-

ion and Order, but did not emphasize, is that *Seeborg* establishes only one prima facie burden for a plaintiff—a showing that the product was dangerously defective when it left the seller's or manufacturer's hands. Evidence of a modification, rather than being relevant to a separate unrelated prima facie burden, was relevant in *Seeborg*, on its particular facts, only to the determination of the existence of the alleged dangerous defect at the time of manufacture or sale.

Language in *Seeborg* supports the single prima facie burden interpretation:

> Before a purchaser may recover upon a products liability cause of action he must demonstrate that at the time the product leaves the manufacturer's or seller's hands it is dangerously defective.... There is little doubt in this case that since the vehicle did burn it was then in a dangerously defective condition. However, before plaintiff is entitled to a jury determination, there must be evidence from which it could be found that no change in the condition of the vehicle had been made from the time of its purchase which was essential to the cause of the loss. It was the contention of defendants that they were entitled to summary judgment because there had been an alteration in the vehicle since it was purchased and plaintiff could not demonstrate it was more probable than not that the change was immaterial to the vehicle's destruction; therefore, as a matter of law plaintiff could not recover. Plaintiff contends that defendants were not entitled to summary judgment because they had not carried "their burden to show that the installation of the (stronger) fuse was the proximate cause of the fire. ***."

*Seeborg*, 284 Or. at 699, 588 P.2d at 1103 (citations and footnotes omitted). The word "then," in the second sentence of this paragraph could mean "at the time the product leaves the manufacturer's or seller's hands," as is stated in the previous sentence. Such a reading supports an interpretation of two distinct prima facie elements.

But, the word "then" more likely refers to the time at which the car burned. Thus, the court was saying that in *Seeborg*, while there obviously was a "defect" at the time the car burned, a defect at that time does not conclusively demonstrate, in a case with a post-sale modification, that the defect existed at the time of the manufacture or sale. If, regardless of any modification, a dangerous defect at the time of manufacture is established, the plaintiff has established a prima facie case. If, however, regardless of any modification, a dangerous defect at the time of manufacture is not necessarily demonstrated, then the plaintiff has to show, as a way of showing that the defect existed at the time of manufacture, that it is more probable than not that the modification was not essential to the cause of the injury.

This interpretation is supported by other language in *Seeborg:*

> Plaintiff mistakes the burden which defendants have in establishing their right to summary judgment. Defendants do not have to establish that the stronger fuse was the cause of the fire; *what they do have to establish is that because of the installation of the stronger fuse plaintiff cannot carry his burden to show that there was no change in the vehicle which was essential to its destruction by fire and, thus, that it was dangerously defective at the time of its purchase.* The two are not the same. All defendants have to show is that the admitted factual posture of the case is such that plaintiff would not be entitled to a jury determination. *They have to show that the facts are insufficient to establish that the defective condition of*

*the vehicle which caused its destruction was dangerous at the time it was sold. Id.* at 701, 588 P.2d at 1103 (emphasis added). In this passage, the court twice indicates that the modification issue is not an independent, separate, part of the prima facie case, but is only part of the singular prima facie burden: plaintiff must show that a dangerous defect existed at the time the product left the manufacturer's or seller's hands.

Another section of the opinion underscores this:

> Plaintiff points out that we do not know whether or not the stronger fuse inserted by him after purchase was of a higher amperage rating than that specified by the manual. This is true. Nor, on the other hand, do we know that it was not. If it was established that the fuse was of a greater amperage rating than that specified by the manual, it would be clear (given the record of short circuits and the absence of any other explanation) that the change in the fuse was most probably an essential cause of the fire but for which it would not have occurred. In the present state of the proof it is just as likely that the change was to a greater amperage than that specified, than that it was not, and that the change was an essential cause of the fire. There is nothing to which one can point from which a jury would be able to make a decision one way or the other. Because of the provisions of ORS ·18.105(4) plaintiff may not wait until trial if he has evidence favorable to his position on this subject. Instead, he must produce it at the hearing for summary judgment. *The present state of the record does not entitle him to go to the jury when, in order to carry his burden, he must prove that it is more likely than not that the vehicle's destruction was caused by a dangerously defective condition existing at the time of its purchase.*

*Id.* at 702–03, 588 P.2d at 1104 (emphasis added). Again, the emphasized portion of this paragraph shows that the court is concerned with proving that the dangerously defective condition existed at the time of its purchase.

As indicated at pages sixteen and seventeen of the October 6, 2000 Opinion and Order, the facts of *Seeborg* and the facts in this case are distinguishable. Generally, in modification cases, one of two scenarios are present: (1) the defect existed at the time of manufacture or sale and the modification had no role in causing the injury, or (2) no defect existed at the time of manufacture and the modification caused the injury.

In *Seeborg*, the record showed that two different fused circuits controlled the lights which were affected by the blown fuses. The record also showed that a "stronger and heavier" fuse was inserted into one of those fused circuits before the fire. But, there was no affirmative evidence that the car was dangerously defective at the time it left the manufacturer's or seller's hands.

The existing evidence suggested more than one theory: (1) the injury would not have occurred absent the modification because, without the "stronger and heavier" fuse, the fire would not have occurred, either because the car was not defective when it left the manufacturer's or seller's hands, or because the original fuse would have blown rather than allow a fire to erupt; or (2) there was a pre-existing defect which was unaffected by the insertion of the new fuse. Evidence that could have been offered to show that even without the new fuse, the fire would have occurred, such as evidence that the new fuse was of the same amperage as the original fuse, was not in the record.

Because of the lack of evidence proffered by the plaintiff in *Seeborg*, the plain-

tiff was required to show, as a way of establishing that a defect present at the time of the fire also existed at the time of manufacture, that it was more probable than not that the post-sale modification was not essential to the cause of the injury. Plaintiff did not meet that burden on the record in *Seeborg*.

■ As noted in a recent Second Circuit case, which I cited in the previous Opinion and Order, "material alteration alone is not a defense; rather, material alteration is only a defense when the alteration makes it impossible to conclude that a defect at the time of manufacture was a cause of the injury giving rise to the suit." *White v. ABCO Engineering Corp.*, 221 F.3d 293, 303 (2d Cir.2000). Thus, in *Seeborg*, because the insertion of the "stronger and heavier" fuse made it impossible to conclude that a defect at the time of manufacture was a cause of the fire, the plaintiff was not entitled to go to the jury and the defendant was entitled to summary judgment. For the reasons explained below, such is not the case here.

In the instant case, the following evidence is relevant. First, as noted in the October 6, 2000 Opinion and Order, plaintiff's expert Tom Baird states that the lift was dangerously defective when it left Strato–Lift's hands. Oct. 6, 2000 Opinion and Order at p. 11 (citing Baird Affid. at ¶¶ 11–19, 22–22).

In his affidavit, Baird indicates, *inter alia*, (1) that the operating and safety manual "does not contain adequate instructions or warnings regarding maintenance operations conducted under a raised platform[,]" and that the operating and maintenance manual "does not have any appropriate instructions or warning regarding maintenance operations conducted under a raised platform[;]" (2) that there were "no warning signs on the [lift] about staying clear of the area where the accident occurred while performing maintenance on

the [lift];" (3) that there was "no adequate warning to users that Strato–Lift, Inc. intended the key switch to be any part of a safety device to protect the ground control toggle switches against inadvertent operations[;]," (4) that if "Strato– Lift, Inc. intended the key switch to be part of a safety system to protect the ground control toggle switches from inadvertent operation, the product was defectively designed and manufactured because the power must be on in order to operate the [lift, and thus] any time the [lift] is powered on, the ground control toggle switches would **not be protected** from inadvertent operation[;] and (5) that the lack of guards around the ground control toggle switches on the [lift] ... [indicates that] the [lift] as designed and manufactured by defendant Strato–Lift, Inc. was defective for that reason at the time it was delivered." Baird Affid. at ¶¶ 11–15, 19.

Second, Baird indicates that Ensley's actions in overriding the key system to activate the equipment did not contribute to his death and the "temporary override of the key system with a metal clip ring is not a causal factor in this accident." Baird Affid. at ¶ 21. Baird states that the "unguarded toggle switches were unsafe and it was foreseeable to defendant Strato–Lift, Inc. that this accident would happen by inadvertent contact with the switches." *Id.*

Third, plaintiff's other expert, Herbert A. Painter, states that "[t]he fact that a metal clip ring was clipped to the wires in establishing a circuit for the key switch did not increase the risk of harm to [Ensley]." Painter Affid. at ¶ 8. He further states that the assertion that the lift was dangerous at the time of Ensley's death is the same as asserting that the lift was dangerous at the time it was sold. *Id.* at ¶ 11. He explains that with the metal clip ring clipped on the wires, the lift operated in an identical man-

ner and fashion as it would if the key were inserted in the key switch and turned to the "on" position. *Id.* Thus, he states that "the clip ring did not cause the ground control toggle switches or any other parts or systems of the [lift] to operate in a fashion or manner different than they operated at the time the [lift] was manufactured and sold." *Id.* at ¶ 12. Thus, he concludes that "the metal clip ring clipped to the wires on the [lift] involved in Benjamin Ensley's death did not alter or modify the performance of the [lift] in any manner that would in any way [have] increased the risk of death to anyone, including Benjamin Ensley." *Id.* at ¶ 13.

■ Plaintiff's experts' affidavits raise two material issues of fact: (1) that the modification did not cause the loss, and (2) the alleged defects existed when the lift was manufactured and sold and did cause the loss. Therefore, in contrast to the evidence in *Seeborg*, where the plaintiff offered no evidence, here there is affirmative evidence demonstrating that dangerous defects existed in the lift when it was manufactured and sold. Defendants emphasize that there is no evidence, only speculation, that Ensley would have left the key in and on, if there had been a key. The problem with this argument is that unlike in *Seeborg*, and like in *Jones v. General Motors Corporation*, 139 Or.App. 244, 911 P.2d 1243 (1996) (en banc), *aff'd*, 325 Or. 404, 939 P.2d 608 (1997), plaintiff's affidavits eliminate the ring modification as a causal factor *and* provide evidence of a defect at the time the product left the manufacturer's and seller's hands. *See* Baird Affid. at ¶¶ 11–19, 21–22; Painter Affid. at ¶¶ 8–11, 13.

In summary, *Seeborg* is capable of two interpretations—the one I embraced in the October 6, 2000 Opinion and Order, and the one mentioned, but not fully discussed in that Opinion, and which I adopt here. Although the interpretation discussed in the October 6, 2000 Opinion and Order went beyond what was necessary to decide the issue, based on the discussion in this Opinion, defendants are still not entitled to summary judgment. Thus, while I grant Strato–Lift's and Star Industries's motions for reconsideration, I conclude, upon reconsideration, that Strato–Lift and Star Industries are not entitled to summary judgment.

## II. Motion for Certification

Pursuant to O.R.S. 28.200, defendants jointly move for an order certifying the following question to the Oregon Supreme Court:

Notwithstanding the enactment of Or. Rev.Stat. ("O.R.S.") 30.915 in 1977, is it the law in Oregon, consistent with *Seeborg v. General Motors Corporation*, 284 Or. 695, 588 P.2d 1100 (1978), that a plaintiff, as part of the plaintiff's *prima facie* case in responding to a motion for summary judgment, must establish that it is more likely than not that a post-delivery modification of a product was not an essential cause of the injury or accident?

Joint Motion for Order Certifying Question at p. 2.

■ Under O.R.S. 28.200,

The [Oregon] Supreme Court may answer questions of law certified to it by ... a United States District Court ... when requested by the certifying court if there are involved in any proceedings before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court and the intermediate appellate courts of this state.

O.R.S. 28.200. Generally, the "[u]se of certification rests in the sound discretion"

of the certifying court. *Complaint of McLinn,* 744 F.2d 677, 681 (9th Cir.1984).

In a 1991 case, the Oregon Supreme Court set forth five criteria, based on O.R.S. 28.200, that a certified question must meet before that court will consider exercising its discretion to accept the requested certification:

> (1) The certification must come from a designated court; (2) the question must be one of law; (3) the applicable law must be Oregon law; (4) the question must be one that "may be determinative of the cause;" and (5) it must appear to the certifying court that there is no controlling precedent in the decisions of this court or the Oregon Court of Appeals.

*Western Helicopter Servs., Inc. v. Rogerson Aircraft Corp.,* 311 Or. 361, 364, 811 P.2d 627, 630 (1991). "[W]here one or more of the five statutory criteria is absent, our inquiry will be at an end. We shall deny certification in such cases." *Id.* at 366, 811 P.2d at 631.

Defendants urge that all five criteria have been met. Defendants argue that my earlier holding that proof that a post-delivery modification made to product was not essential to the cause of the accident or injury is not part of plaintiff's prima facie case in responding to a motion for summary judgment, is directly contrary to *Seeborg.* Defendants contend that whether the summary judgment burden of proof announced in *Seeborg* can survive the enactment of O.R.S. 30.915 is a question of Oregon law that may be determinative of this lawsuit. Defendants also argue that neither the Oregon Supreme Court nor the Oregon Court of Appeals has ruled on that issue.

Plaintiff makes three arguments in response: (1) the proposed question is not "determinative of the cause," but rather poses an academic question; (2) "controlling precedent" exists to guide this court in determining Oregon law on the question;

and (3) the question posed by defendants misstates the current rule of law under *Seeborg* and *Jones.*

As explained in the previous section, *Seeborg* can be interpreted in one of two ways, and as I now interpret it, the issues posed by the proposed certification question are not involved. Thus, the certification question posed by defendants is not "determinative" of the cause. Accordingly, certification is inappropriate.

III. Star Industries's Motion for Summary Judgment

For the reasons explained above in regard to the motions for reconsideration, Star Industries's motion for summary judgment is denied.

## CONCLUSION

Defendant Star Industries's motion for summary judgment (# 41) is denied; defendants Star Industries's motion for reconsideration (# 41) is granted; defendant Strato–Lift's motion for reconsideration (# 40) is granted; and defendants' joint motion for certification (# 46) is denied.

IT IS SO ORDERED.